UNITED STATES of America,
Plaintiff–Appellee,

v.

Chris PARKER, Defendant–Appellant.

No. 00–10118.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 2001

Filed March 1, 2001

Sandra Gillies, Woodland, California, for the defendant-appellant.

Christopher P. Sonderby, Assistant U.S. Attorney, Sacramento, California, for the plaintiff-appellee.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

GOODWIN, Circuit Judge:

Christopher Parker appeals his conviction under 18 U.S.C. § 2113(a) and (d) and § 924(c) for conspiracy, bank robbery, and firearms charges. Parker joins co-defendant Spencer Sawyer's argument that the district court erred in admitting a taped conversation between Sawyer and other co-conspirators, and erred in displaying a transcript of the conversation to the jury during playback of the tape. Parker argues that his sentence of 888 months, which reflects mandatory minimum terms for firearms charges, violates the Eighth Amendment. Parker also contends that the district court erred in applying sentencing enhancements pursuant to United States Sentencing Guidelines Manual (U.S.S.G.) § 2B3.1(b)(4)(B) (2000) for physical restraint of a victim. He further argues that the district court's participation in the trial proceedings denied him a fair trial, that the prosecutor improperly vouched for the credibility of his witnesses, and that the district court erred in determining that he used a minor to commit a crime within the meaning of U.S.S.G. § 3B1.4 (2000).

We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm the conviction, but reverse and remand the sentencing enhancement for physical restraint with respect to Count Four, and for use of a minor to commit a crime.

Defendant was a member of a gang that conducted a series of robberies of federally insured banks in Sacramento between November 30, 1996, and March 15, 1997. Defendant personally participated in all the robberies at issue in this case.

Defendant was charged as follows: Count One, conspiracy to commit armed bank robbery between November 30, 1996, and April 1, 1997; Count Two, armed bank robbery on December 20, 1996; Count Three, use or carrying of a gun in connection with Count Two; Count Four, armed bank robbery on February 13, 1997; Count Five, use or carrying of a gun in connection with Count Four; Count Six, armed bank robbery on February 14, 1997; Count Seven, use or carrying of a gun in connection with Count Six; Count Eight, armed bank robbery on March 15, 1997; Count Nine, use or carrying of a gun in connection with Count Eight. Counts Two through Nine were each charged alternatively as aiding and abetting.

During the district court proceedings, the court denied co-defendant Sawyer's motion to exclude evidence concerning a March 28, 1997, covert recording. The exhibit recorded a wiretapped conversation among Nathaniel Washington, a co-conspirator who agreed to cooperate with the FBI, Sawyer, and two other co-conspirators. Comments by Sawyer on the tape suggested that he would retaliate against those co-conspirators he suspected of cooperating with the FBI.

At trial, co-conspirators Jeffrey Elder, James Johnson, and Nathaniel Washington provided testimony on how the robbery gang worked and what role each member of the gang played. The defense case centered heavily around portraying these witnesses as having provided their testimony in exchange for reduced sentences or, in Washington's case, complete immunity.

On October 24–25, 1999, the jury returned guilty verdicts against Defendant on all counts in the Indictment. Parker was sentenced to a total of 888 months in custody, calculated as follows: 60 months on Count One; 108 months for Counts Two, Four, Six, and Eight, to be served concurrently with each other and Count One; a consecutive term of 60 months on Count Three; and consecutive terms of 240 months for Counts Five, Seven, and Nine. The total sentence was based on findings that included physical restraint of a victim warranting a two-level upward adjustment on Counts Two and Four, *see* U.S.S.G. § 2B3.1(b)(4)(B), and use of a minor to commit a crime, also triggering a two-level sentencing enhancement, *see* U.S.S.G. § 3B1.4.

**The Taped Conversation**

■ Parker argues that admission of the tape recording and display of the transcript to the jury were reversible error. The tape was admitted against co-defendant Sawyer, but not against Parker. The tape was redacted to remove all references to Parker, and the district court instructed the jury that the tape did not constitute evidence against Parker. The admission of the tape and the display of the transcript were therefore not prejudicial to Parker's case and there was no error.

**The Firearms Charge**

■ Parker's charges for using or carrying a firearm during and in relation to four bank robberies in violation of 18 U.S.C. § 924(c) account for 300 months of his total sentence. Despite Defendant's contentions otherwise, the mandatory consecutive sentences imposed by § 924(c) do not violate the Eighth Amendment. Generally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds. *See United States v. Zavala–Serra*, 853 F.2d 1512, 1518 (9th Cir.1988). In *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir.1998), we held that mandatory consecutive minimum sentences for violations of § 924(c) amounting to 1141 and 597 months for two co-defendants did not run afoul of the Constitution. Noting that "[a]rmed robberies are extremely dangerous crimes," we held:

"We are unable to say that ... the robberies committed by [the defendants] and the sentences imposed for each crime are grossly disproportionate." *Id.*

The Supreme Court also has held that a mandatory life sentence without the possibility of parole imposed by a Michigan drug possession statute did not violate the Eighth Amendment. *See Harmelin v. Michigan,* 501 U.S. 957, 994, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense ...."); *see also United States v. Wilkins,* 911 F.2d 337, 339 (9th Cir.1990) (holding that § 924(c)'s mandatory sentencing scheme is constitutional). In this light, Defendant's sentence was not cruel and unusual in violation of the Eighth Amendment.

### Physical Restraint of Victim

Parker received sentencing enhancements for physical restraint on Counts Two and Four, pursuant to U.S.S.G. § 2B3.1(b)(4)(B). Count Two involved the December 20, 1996, robbery during which Evan Baylon grabbed a teller by her hair and pulled her up from the floor. There is little doubt that this conduct constituted physical restraint, *see United States v. Thompson,* 109 F.3d 639, 641 (9th Cir.1997); the only question is whether this defendant is liable for the conduct. U.S.S.G. § 1B1.3(b) (2000) holds a defendant accountable at sentencing for all reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken criminal activity. *See United States v. Carter,* 219 F.3d 863, 868 (9th Cir.2000). Here, it is clear that the accomplice's physical restraint of the bank teller during the robbery was reasonably foreseeable by Parker.

In *United States v. Shaw,* 91 F.3d 86, 89 (9th Cir.1996), we held that a defendant who was absent during the planning of the robbery was responsible for a co-conspirator's physical restraint of a victim. Indeed, it is not only reasonably foreseeable, but *probable* that victims will be physically restrained during a bank robbery. Parker's § 2B3.1(b)(4)(B) sentence enhancement in connection with Count Two was appropriate.

Count Four involved the February 13, 1997, robbery during which one of the robbers pointed a gun at a bank teller and yelled at her to get down on the floor. Parker claims that the conduct in Count Four did not rise to the level of "physical restraint" within the meaning of § 2B3.1(b)(4)(B).

The application note to § 2B3.1(b)(4)(B) defines "physically restrained" as the "forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 2B3.1(b)(4)(B), cmt. n.1. These examples are illustrative and not exclusive. *See United States v. Foppe,* 993 F.2d 1444, 1452 (9th Cir.1993).

There is little question that the victim's mobility was restricted when she was made to lie down on the floor. However, the degree to which the victim was restrained was not appreciably different from that of bank tellers who are made to get down by robbers who yell the command generally to everyone in the bank. Indeed, cases holding that a defendant physically restrained his victims usually involve a *sustained focus* on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere. *See, e.g., United States v. Nelson,* 137 F.3d 1094, 1112 (9th Cir.1998) (holding that a robber physically restrained two victims when he ordered them into a back room at gunpoint); *Thompson,* 109 F.3d at 641 (holding that the defendant physically restrained his victim when he either made someone lie down and then stand up repeatedly, or forced another person to walk some distance, all at gunpoint).

It is therefore likely that Congress meant for something more than briefly pointing a gun at a victim and commanding her once to get down to constitute physical restraint, given that nearly all armed bank robberies will presumably involve such

acts. In *United States v. Anglin,* 169 F.3d 154, 164 (2d Cir.1999), the Second Circuit held that a bank robber who brandished a gun and told the tellers to get down on the floor and not to move did not physically restrain his victims as contemplated by § 2B3.1(b)(4)(B). According to the *Anglin* court, a decision against the defendant on this issue would make every armed robbery subject to the two-level enhancement for physical restraint "unless it took place in unoccupied premises." *Id.* at 165.

Under a "sustained focus" standard, the co-conspirator's conduct in this case did not rise to the level of physical restraint. We therefore reverse Parker's sentence and remand as to Count Four to the district court for resentencing.

**Trial Court Intervention**

The record shows that the district judge intervened at numerous points during the trial, asking questions on behalf of the prosecution when the prosecution asked leading or otherwise objectionable questions. But despite the judge's substantial participation in the proceedings, the court did not deprive the defendant of a fair trial.

A trial judge's participation oversteps the bounds of propriety and deprives the parties of a fair trial only when "the record discloses actual bias ... or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Mostella,* 802 F.2d 358, 361 (9th Cir.1986) (citation and internal quotation marks omitted). However, " '[a] trial judge is more than a moderator or umpire.' His responsibility is to preside in the manner and with the demeanor to provide a fair trial to all parties and his discretion in the performance of this duty and management is wide." *United States v. Larson,* 507 F.2d 385, 389 (9th Cir.1974) (quoting *Robinson v. United States,* 401 F.2d 248, 252 (9th Cir.1968)). The judge may therefore "participate in the examination of witnesses to clarify issues and call the jury's attention to important evidence."

*United States v. Wilson,* 16 F.3d 1027, 1031 (9th Cir.1994).

Here, the trial judge's interventions did not go beyond the boundaries deemed acceptable in *Mostella* and *Larson.* The evidence in the record does not show actual bias or project the appearance of advocacy or partiality. The mere fact that a judge's participation in a trial is substantial or even "extreme" does not *ipso facto* deprive a defendant of a fair trial. *See United States v. Swacker,* 628 F.2d 1250, 1253 (9th Cir.1980). Furthermore, the lower court instructed members of the jury not to infer any opinion from its questioning, reminding them that "you are the judges of the facts." *See id.* at 1254 (noting with approval that the court instructed the jury to disregard any inference that could have been suggested by the court's development of the facts). In light of the above, the judge's intervention in the trial did not deprive Parker of a fair trial.

**Prosecutorial Vouching**

Parker next argues that the prosecutor improperly vouched for the credibility of his witnesses when he suggested that it was improbable that Johnson, Elder, and Washington were paid off for their testimony and lied on the stand since they had no opportunity to collaborate and make their stories consistent after their arrest.

"Claims that a prosecutor improperly vouched for the credibility of witnesses are reviewed for plain error when, as here, no objection was made by the defendant." *United States v. Daas,* 198 F.3d 1167, 1178 (9th Cir.1999). A prosecutor vouches for the credibility of a witness when he or she implies that the government can guarantee the witness's veracity in either of two ways: by (1) placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or (2) suggesting that information not presented to the jury sup-

ports the witness's testimony. *See id.; United States v. Necoechea*, 986 F.2d 1273 (9th Cir.1993).

■ No bright line dictates when vouching requires reversal. *See Daas*, 198 F.3d at 1178. Relevant factors include: the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.

*Necoechea*, 986 F.2d at 1278.

Here the prosecutor asserted during rebuttal that all three co-conspirators were sequestered from each other. In fact, the record discloses that only Washington was separated from the other two co-conspirators. Even if we assume that the prosecutor's statement was impermissible vouching, it did not, "when taken in the context of the entire trial, materially affect[ ] the jury's ability to judge the evidence impartially." *United States v. Rudberg*, 122 F.3d 1199, 1205 (9th Cir.1997).

■ Whether an instance of vouching amounts to plain error depends on whether the court issued curative instructions, as well as on the importance of the vouching to the case overall. *See Daas*, 198 F.3d at 1178; *Necoechea*, 986 F.2d at 1278. Here the judge gave the jury instructions that the attorneys' statements were not evidence, that its job was to assess the credibility of the witnesses for itself, and that it was perfectly free to reject the witnesses' testimony. The jury was also told to view the testimony of the co-conspirators with greater caution in light of their guilty pleas, prior felony convictions, immunity, plea agreements, and status as accomplices. Curative instructions, then, were made in abundance.

In addition, there is strong evidence that points to Parker's guilt independent of the testimony of the three cooperating witnesses, including Defendant's admissions to defense witness Sidney Smallings, eyewitness identification of Parker in one of the robberies, and a match between shoes found in Defendant's home and those worn by one of the bank robbers. In light of such evidence, the prosecutor's minor misstatement was not central to the case overall, and did not constitute vouching requiring reversal.

**Use of a Minor**

■ Finally, the December 20, 1996 robbery was executed by Parker and Evan Baylon, a minor. The district court applied a two-level sentence enhancement pursuant to U.S.S.G. § 3B1.4 for use of a minor to commit a crime. U.S.S.G. § 3B1.4 provides for a two-level upward adjustment "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense." The commentary to the sentencing guideline defines "used" as "directly commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, cmt. n.1; *see Stinson v. United States*, 508 U.S. 36, 38, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

The district court erred in applying the upward adjustment for use of a minor. We hold that a defendant's participation in an armed bank robbery with a minor does not warrant a sentence enhancement under § 3B1.4 in the absence of evidence that the defendant acted affirmatively to involve the minor in the robbery, beyond merely acting as his partner. *See United States v. Butler*, 207 F.3d 839, 848 (6th Cir.2000). Here there was no such evidence: The district court's finding was that Parker and Baylon were merely co-

conspirators. The fact that Defendant was the minor's partner and profited from his participation in the crime does not show that he acted affirmatively to involve Baylon.

The Seventh Circuit has held that a defendant "used" a minor in connection with a drug trafficking offense when there was a juvenile co-conspirator, but there was apparently no evidence that the defendant acted affirmatively to involve the minor in the crime. *See United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997); *see also United States v. Brack*, 188 F.3d 748, 765 (7th Cir.1999) (holding that the defendant used a minor when she was heard to request that the minor deliver narcotics to her in a wiretapped conversation). Significantly, however, the Seventh Circuit's construction of § 3B1.4 subjects all adult co-conspirators to a two-step upward adjustment if a person under 18 years of age was in any way involved in the commission of the offense. This interpretation is at odds with both the plain meaning of the statute and the advisory note, which clearly implies that only actions affirmatively taken to involve a minor in the offense will qualify under § 3B1.4. If Congress meant to punish persons who committed an offense that in any way *involved* a minor, it would have provided so explicitly instead of employing the "used or attempted to use" language.

To this end, the prosecution's argument that Parker "used" Baylon because he and his co-conspirators "availed" themselves of the fruits of the minor's thievery is misplaced. It is likewise fallacious to argue that defendant Sawyer's "presence" encouraged the minor to loot the teller drawers at the bank. Those arguments are tantamount to an across-the-board enhancement for committing a crime with a minor, which we have rejected.

Because Defendant did not command, encourage, intimidate, counsel, train, procure, recruit, solicit, or otherwise actively involve Baylon, he did not "use[ ] or attempt[ ] to use" him under the meaning of § 3B1.4. Accordingly, the two-level sentencing enhancement for use of a minor to commit a crime was error.

For the above reasons, we AFFIRM Parker's conviction, REVERSE (1) the two-level enhancement for physical restraint under U.S.S.G. § 1B1.3(b) with respect to Count Four, and (2) the two-level enhancement for use of a minor under U.S.S.G. § 3B1.4, and REMAND for resentencing.

AFFIRMED in part, REVERSED in part and REMANDED.