386 F.3d 475
 UNITED STATES of America, Appellee,
v.
Rasheen LEWIS, also known as Rasheed Lewis, also known as "Noriega", also known as Francis G. Sheen, Kenneth Richardson aka "Primo", aka "Tyree", aka "Rico", Aaron Harris, aka "Dog", aka "Toast", aka "DMX", aka "Hit Man Sosa", John Foster, also known as "D.C.", also known as Troy Kelly, also known as Anthony Johnson, also known as John Billups, also known as David Nunley, Luke Jones, aka "Mega", Defendants-Appellants.
 No. 01-1215, 01-1240, 01-1242, 01-1374, 01-1577.
 United States Court of Appeals, Second Circuit.
 Argued December 8, 2003.
 Decided October 5, 2004.
 
 Appeal from the United States District Court for the District of Connecticut, Alan H. Nevas, J.
 
 
 1
 David L. Lewis, New York, NY (Lewis & Fiore, New York, New York, of counsel), for Defendant-Appellant Rasheen Lewis.
 
 
 2
 Barry M. Fallick, New York, NY (Rochman Platzer Fallick & Sternheim, LLP, New York, New York, of counsel), for Defendant-Appellant Kenneth Richardson.
 
 
 3
 Laura J. Lefkowitz, New York, NY (Roger L. Stavis, Stavis & Kornfeld, LLP, New York, New York, of counsel), for Defendant-Appellant John Foster.
 
 
 4
 Edward T. Murnane, Jr., Bridgeport, CT, (Gary A. Mastronardi, Law Firm of Gary A. Mastronardi, Bridgeport, CT, of counsel), for Defendant-Appellant Luke Jones.
 
 
 5
 Dawn E. Caradonna, Law Office of Dawn E. Caradonna, Peterborough, NH (Richard B. Lind, Law Office of Richard B. Lind, New York, NY, of counsel), for Defendant-Appellant Aaron Harris.
 
 
 6
 Alex V. Hernandez, Assistant United States Attorney, Bridgeport, CT (Kevin J. O'Connor, United States Attorney, Alina P. Marquez, Jeffrey A. Meyer, Assistant United States Attorneys, District of Connecticut, Bridgeport, CT, of counsel), for Appellee United States of America.
 
 
 7
 Before: NEWMAN, CARDAMONE, and KATZMANN, Circuit Judges.
 
 
 8
 CARDAMONE, Circuit Judge.
 
 
 9
 Five defendants: John Foster, Aaron Harris, Rasheen Lewis, Kenneth Richardson, and Luke Jones, appeal their judgments of conviction and sentences entered in the United States District Court for the District of Connecticut (Nevas, J.) on June 21, 2001, April 6, 2001, March 26, 2001, April 4, 2001, and October 29, 2001, respectively, after a jury convicted Foster, Harris, Lewis and Richardson of conspiracy to distribute cocaine and heroin in violation of 21 U.S.C. § 846 in December 2000 and after Jones pled guilty to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1) in September 2000.
 
 
 10
 Defendants raise a number of objections to the proceedings below. Although we affirm the judgments of conviction and sentences in each case, two of the objections warrant a writing and are addressed in this opinion. Defendants' remaining challenges are without merit and are disposed of in a summary order filed concurrently with this opinion.
 
 
 11
 We turn to consider whether it was error for the district court: (1) to increase defendant Harris' sentence for use of a minor in the drug conspiracy pursuant to U.S.S.G. § 3B1.4, and (2) to deny defendant Lewis' motion to suppress evidence seized from his bedroom.
 
 BACKGROUND
 
 12
 At the eight-day trial the government sought to prove that defendants Harris, Richardson, Lewis and Foster[1] conspired together from 1997 to 2000 to distribute large amounts of heroin, cocaine and cocaine base (crack) at the P.T. Barnum public housing project in Bridgeport, Connecticut and elsewhere in that city. The evidence consisted of, among other things, the testimony of cooperating witnesses— two of whom had been lieutenants in the drug distribution ring and one of whom was a major supplier to the conspiracy— law enforcement agents, and defendant Harris. The testimony showed there was a retail drug business operating in the middle court area of the P.T. Barnum project, and that this drug business was run by Luke, Lyle, and Lonnie Jones.[2] It also showed that defendants Harris, Richardson, Lewis and Foster assisted the Joneses in their retail drug distribution scheme, traveling with and for the Joneses to buy the narcotics, providing the narcotics to the street level sellers—or selling it themselves— and carrying weapons and wearing bullet proof vests to protect themselves and their product.
 
 
 13
 The jury returned verdicts of guilty against defendants Foster, Harris, Lewis, and Richardson for conspiring to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of crack. Luke Jones entered a plea of guilty to possession of an unlawful firearm, a charge that was contained in the same indictment that charged him and his co-defendants with conspiracy. The facts relating to the two issues we discuss are recited below. We deal with the issues of the increase in Harris' sentence because of a minor and the denial of Lewis' motion to suppress in order.
 
 DISCUSSION
 I Harris' Sentence
 
 14
 The jury rendered its verdict against defendant Harris on December 4, 2000. On April 5, 2001 the district court sentenced him to a term of life imprisonment. The sentencing court concluded that since the offense involved more than 1.5 kilograms of crack, the United States Sentencing Guidelines (guidelines) dictated a base offense level of 38, U.S.S.G. § 2D1.1(c)(1) (2001),[3] and that there were a number of applicable increases, among which was a two-level enhancement for the use of a minor pursuant to U.S.S.G. § 3B1.4, resulting in an offense level of 48. A life sentence becomes mandatory at the offense level of 43.
 
 
 15
 In the summary order filed concurrently with this opinion, we affirm the other increases the district court relied on to increase Harris' offense level. Even were we to decide that the trial court incorrectly applied § 3B1.4 in order to increase Harris' offense level, his sentence of life imprisonment would still be mandatory under the guidelines since his offense level would only decrease to 46.
 
 
 16
 The district court based its offense level enhancement under § 3B1.4 on the participation of Glenda Jiminez, who was a minor when she began selling drugs at the P.T. Barnum housing project where Harris played a supervisory role. Jiminez was a witness for the prosecution at trial. Harris contends the district court erred in enhancing his sentence because there was no evidence he personally acted to bring Jiminez into the conspiracy, he was not aware she was a minor, and it was not reasonable to foresee that a minor would be used to further this conspiracy simply because it was a retail drug operation in a public housing project. We review the district court's factual findings for clear error and review its legal determinations de novo, giving due deference to its application of the guidelines to the facts. United States v. Berg, 250 F.3d 139, 142 (2d Cir.2001).
 
 
 17
 The guidelines provide for a two-level increase "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense." U.S.S.G. § 3B1.4. In addition, the guidelines instruct that any adjustments in chapter 3, of which § 3B1.4 is a part, are to be based, "in the case of a jointly undertaken criminal activity ..., [on] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." § 1B1.3(a)(1)(B). Since the offense of conviction was a conspiracy, which falls under the definition of jointly undertaken activity in § 1B1.3(a)(1)(B), the district court believed Harris would be responsible for any reasonably foreseeable acts of others taken in furtherance of the conspiracy. It specifically found it was reasonable for Harris to foresee that minors would be recruited to distribute narcotics under the circumstances at issue in this case and therefore the enhancement was appropriate.
 
 
 18
 We write on the issue of whether § 3B1.4 can be applied to increase the offense level of the leader of a conspiracy who was not directly involved with recruiting a minor, and did not have actual knowledge that such individual was a minor, but who nonetheless had general authority over the activities in furtherance of the conspiracy. This issue is one of first impression in this Circuit.
 
 
 19
 First, we agree with the majority of our sister circuits that have ruled on § 3B1.4. Those circuits have held, based on its plain language, that § 3B1.4 does not require scienter in order to apply the enhancement, that is, it is not necessary for the government to show that a defendant had actual knowledge that the person undertaking criminal activity was a minor. United States v. Thornton, 306 F.3d 1355, 1358-60 (3d Cir.2002); United States v. Gonzalez, 262 F.3d 867, 870 (9th Cir.2001); United States v. McClain, 252 F.3d 1279, 1285-87 (11th Cir.2001). In addition, we are in agreement with two of our sister circuits that have held that the intersection of §§ 3B1.4 and 1B1.3(a)(1)(B), based on the plain language of those provisions, mandates the result reached by the district court in this case. McClain, 252 F.3d at 1287-88; United States v. Patrick, 248 F.3d 11, 27-28 (1st Cir.2001). The rationale of these cases is bottomed on the introductory commentary to Part B of chapter 3 of the guidelines, of which § 3B1.4 is a part. The comment states that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct)." U.S.S.G. ch. 3, pt. B, introductory cmt. Section 1B1.3(a)(1)(B) provides that where the offense is a jointly undertaken criminal activity, chapter 3 sentencing adjustments are to be made on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." The offense of conspiracy is a jointly undertaken criminal activity, § 3B1.4 is a chapter 3 sentencing adjustment, and we agree with the district court's finding that the use of a minor by one of defendant Harris' co-conspirators was a reasonably foreseeable act in furtherance of the conspiracy. It follows that these two guideline provisions permit the two-level enhancement.
 
 
 20
 Harris contends that the decisions denying such an enhancement, in the absence of evidence that the defendant himself affirmatively took steps to recruit a minor, are the more reasonable interpretation of these guidelines. The cases Harris cites are inapposite because they dealt with the question of what constitutes use (or attempted use) of a minor for the purpose of § 3B1.4, and not with the intersection of §§ 3B1.4 and 1B1.3(a)(1)(B). See United States v. Parker, 241 F.3d 1114, 1120-21 (9th Cir.2001); United States v. Butler, 207 F.3d 839, 844-49 (6th Cir.2000). Although these cases expressed concern that all co-conspirators might be strictly liable whenever a minor is involved in any way in their conspiracy, we think such concern is unwarranted. The sentencing enhancement may be imposed on co-conspirators who did not themselves use or attempt to use minors only if those co-conspirators could have reasonably foreseen that minors would be used by others in their conspiracy. See § 1B1.3(a)(1)(B). This requirement of reasonable foreseeability means that courts must assess the factual circumstances in each case.
 
 
 21
 In this case, the district court was not clearly erroneous to find that Harris could reasonably have foreseen that a minor would be used in the conspiracy that he headed. Harris was an organizer and leader of the drug distribution ring in a public housing project. Even though he did not request that a minor be recruited or even know that this had occurred, he should have anticipated that co-conspirators under his supervision would recruit a minor because they were operating in an environment where adults and minors lived together in close proximity. Harris' sentence is therefore affirmed.
 
 II Lewis' Motion to Suppress
 
 22
 We turn next to Lewis' motion to suppress. On July 24, 2000 the district court conducted a hearing pursuant to defendant Lewis' motion to suppress evidence recovered from his bedroom by law enforcement agents on the day of his arrest. That evidence included a bulletproof vest, a cellular telephone and a pager. On November 1, 2000 the trial court denied defendant's motion. Its findings of fact relating to the search are uncontested. It found Sheila Lewis, the defendant's mother, had voluntarily consented to the search of her son's bedroom. The defendant argues that the district court's legal conclusion that his mother had authority to give consent to search his bedroom based on the fact that she had permission to access that room and did so on occasion to clean it was erroneous. Defendant continues that since he was himself present at the scene of the search, handcuffed in a police car outside his apartment building, the officers should have obtained his consent rather than seeking it from his mother.
 
 
 23
 The factual findings on which the district court's suppression ruling was based are reviewed for clear error, viewing the evidence in the light most favorable to the government; the legal conclusions on which this ruling was based are reviewed de novo. United States v. Brown, 52 F.3d 415, 420 (2d Cir.1995).
 
 
 24
 A warrantless search is per se unreasonable under the Fourth Amendment, unless the search falls under certain specific and well-delineated exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of the exceptions is a search conducted pursuant to consent by an authorized third party. In such case, neither a warrant nor probable cause is necessary to justify the search; the government is simply required to prove by a preponderance of the evidence adequate authority to consent. See, e.g., United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).
 
 
 25
 The defendant concedes that his mother had permission to access his room, and had actually entered it a number of times to clean it. Further, it is uncontested that there was no lock on his bedroom door, which was a room located within his mother's bedroom. That proof demonstrates that she had access and permission to enter, and could indeed enter at any time. Under the law of this Circuit, this evidence is sufficient to show that the mother had actual authority to consent to the search of her son's bedroom. See Koch v. Town of Brattleboro, 287 F.3d 162, 167 (2d Cir.2002).
 
 
 26
 Once a person gives authority, to be shared in common, with another over certain premises, any hope that a search of those premises based on that other person's consent will be found a Fourth Amendment violation is slim at best. The reason for this conclusion is because the Supreme Court made clear that common authority rests on the notion that any co-inhabitant can permit inspection in his/her own right and others, including defendant, have assumed the risk that such permission to search might occur. Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. 988. Accordingly, the defendant's decision to permit his mother joint access to his bedroom limits his reasonable expectation of privacy in that room, and to that extent also limits his Fourth Amendment protection in the effects seized there. See id.
 
 
 27
 Moreover, the case law does not support Lewis' claim that the officers should have asked his permission to search since he was outside of the apartment in handcuffs in a police car at the time of the search. Supreme Court and Second Circuit law establishes that in situations where the defendant is present—and even in situations where the defendant has already refused consent—the officers may nevertheless rely on consent from a third party who has the requisite authority to give it. See, e.g., Matlock, 415 U.S. at 166, 171, 94 S.Ct. 988 (warrantless search may be justified based on the consent of a third party with proper authority even when the arrested defendant was on the scene and available to give consent); United States v. Davis, 967 F.2d 84, 86-88 (2d Cir.1992) (third-party consent justified a search and seizure despite fact that defendant was in the custody of police in squad car outside and was never asked to consent); see also United States v. Sumlin, 567 F.2d 684, 687-88 (6th Cir.1977) (holding that since Matlock did not rely on the defendant's absence in order to justify third-party consent, but instead relied on an assumption of risk analysis, it was not constitutionally significant that defendant refused to consent to the search before the officers requested and were given third-party consent). In consequence, the search of Lewis' bedroom while he was present outside does not violate his Fourth Amendment rights.
 
 CONCLUSION
 
 28
 Accordingly, for the reasons stated, we affirm the sentence imposed upon Harris and the order denying Lewis' suppression motion. Because we have resolved all the other issues on this appeal in the summary order filed concurrently with this opinion, the judgments of conviction are affirmed.
 
 
 29
 However, the mandate in this case will be held pending the Supreme Court's decision in United States v. Booker, No. 04-104, and United States v. Fanfan, No. 04-105 (argued October 4, 2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendants' sentences until after the Supreme Court's decision in Booker and Fanfan. In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of Booker and Fanfan.
 
 
 
 Notes:
 
 
 [1]
 A fifth defendant, Craig Baldwin, also went to trial, but was acquitted by the jury
 
 
 [2]
 The initial indictments included Luke Jones and two additional defendants, Lonnie and Lance Jones. The district court severed their trials from those of the individuals tried in the instant case. We address Lonnie and Lance Jones' appeals, for which we heard oral argument on the same day as the argument in this case, in a separate opinion and order
 
 
 [3]
 All citations are to the 2001 version of the United States Sentencing Guidelines