REINHARDT, Circuit Judge,
concurring in the judgment.
Although precedent forecloses Marion Hungerford’s Eighth Amendment challenge to 18 U.S.C. § 924(c) (2006),[1] under which she received almost all of her 159-year term of imprisonment, it cannot be left unsaid how irrational, inhumane, and absurd the sentence in this case is, and moreover, how this particular sentence is a predictable by-product of the cruel and unjust mandatory minimum sentencing scheme adopted by Congress. This court, along with many individuals, has previously urged Congress to “reconsider its harsh scheme of mandatory minimum sentences without the possibility of parole;”[2] now, Hungerford’s case serves as yet another forceful reminder that the scheme is severely broken and badly in need of repair. Although we lack the authority either to reform these statutes or to reconsider the Eighth Amendment principles adopted by the Supreme Court, those who have both the power and the responsibility to do so should return our federal sentencing *1119 scheme to a day in which the controlling principles are fairness, proportionality, prudence and informed discretion.
When we urged Congress to reform § 924 and other unnecessarily harsh mandatory sentencing laws,[3] each additional conviction for use of a firearm in connection with a crime of violence under § 924(c) provided for a 20-year mandatory consecutive sentence. Months later, Congress amended § 924(c)(1) to mandate 25-year mandatory consecutive sentences for such offenses. An Act to Throttle Criminal Use of Guns, Pub.L. No. 105-386, § 1(a), 112 Stat. 3469 (1998). As a result, § 924(c) now requires a 5-year sentence for a single conviction of use of a firearm and mandatory consecutive sentences of 25 years for each additional count. ' 18 U.S.C. § 924(c)(1).
Although she never touched a gun, Hun-gerford, was convicted of one count of conspiracy, seven counts of robbery, and seven counts of use of á firearm in relation to a crime of violence. The district judge sentenced her to 5 years on the first count of use of a firearm and 25 years consecutively on each of six additional counts. In addition, the district judge sentenced her to serve 57 months for the conspiracy and 57 months for the robbery convictions, the sentences to run concurrently with each other. Because § 924(c) gives the sentencing judge no choice or discretion, except to impose the statutory mandatory sentences, the judge was forced to sentence Hungerford, a 52 yeár-old mentally disturbed woman with no prior criminal record, to over 159 years in prison. What the judge was not permitted to take into account when sentencing Hungerford should shock the conscience of anyone who believes that reasonable proportionality between a crime and the sentence is a necessary condition of fair sentencing.
■ The judge could not consider myriad potential mitigating factors, including Hungerford’s severe form of Borderline Personality Disorder, which can alter one’s perception of reality in a manner similar to schizophrenia and has led to numerous suicide attempts on Hungerford’s part. The judge could not consider a psychiatrist’s testimony regarding Hungerford’s very, low capacity to assess reality/ her low level of intellectual functioning, and the fact that she is “very easily victimized.” Especially important, the court was prohibited from taking into account the fact that Hungerford was “a follower,” was “susceptible] to outside direction” and suffered from “suggestivity.” Also out of bounds was Hungerford’s vulnerable and chaotic state. Shortly before the robberies her husband of 26 years, with whom she had four children, had moved'out of their home, largely as a result of her deteriorating mental condition, and, Hunger-ford, finding herself impecunious and without a job'or any prospects for employment, had begun living with a new male companion, on whom she became dependent, Dana Canfield, the principal in the robberies. Nor could the judge consider that Hunger-ford, at the age of 52, was a person with no criminal history prior to the string of armed robberies committed by Canfield, and that she had apparently led a spotless, law-abiding existence. The judge could not even take into account the significant facts that no one was physically injured in any of the robberies and that the total loss resulting from them was less than $10,000.
Most important, under the law, Hunger-ford’s extremely limited role in the crimes of which she was convicted was also irrelevant to her sentencing. Although she conspired with and aided and abetted her new-found male companion, Canfield, in a string of'armed robberies, her partic *1120 ipation in the robberies themselves was quite limited, particularly when compared to Canfield’s dominant role. During most of the robberies, Hungerford took no active part other than driving Canfield to or from the scene of the crime or easing the stores that Canfield later robbed. After a police detective contacted Hungerford, she did not participate whatsoever in any of the subsequent robberies and merely received money from Canfield following his commission of those robberies. It is worth noting that Hungerford’s mental disorder likely impeded her ability to affirmatively opt out of the conspiracy after contact with the police, and even to accept the fact that she had been engaged in criminal conduct. Finally, at no time did Hungerford personally use or even carry a gun, or personally threaten anyone; yet, under § 924(c), this fact, too, is deemed irrelevant. At the time of sentencing, Hungerford’s counsel presented substantial evidence of her severe mental illness. Attached to this opinion is a summary of that troubling testimony.
Under a fair and proportional sentencing scheme, a judge would not just be allowed to consider these compelling mitigating circumstances, but rather he would be required to give them substantial weight in determining the proper sentence. Even if “severe, mandatory penalties ... are not unusual in the constitutional sense,” Harmelin v. Michigan, 501 U.S. 957, 994, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), they “may be cruel.” Id. Although Congress may be permitted under the Constitution to adopt a cruel sentencing scheme, though not a cruel and unusual one, surely the people’s representatives should aim above this dismally low mark. Here, it is difficult to escape the conclusion that the current mandatory sentencing laws have imposed an immensely cruel, if not barbaric, 159-year sentence on a severely mentally disturbed person who played a limited and fairly passive role in several robberies during which no one was physically harmed.[4]
Not only is the sentence cruel, it is absurd. It imposes a term of imprisonment of 159 years, under which Hunger-ford would be incarcerated until she reached the age of 208. The absurdity is best illustrated by the judge’s reading to Hungerford the terms of supervised release which she would be required to undergo when she emerged from prison toward the end of the first decade of her third century. The judge told Hungerford that “[w]ithin 72 hours of release from custody,” — in the year 2162 — she must “report in person to the probation office,” and while on supervised release she must “participate in substance abuse testing to include not more than 104 urinalysis tests.” He further ordered Hungerford to “participate in a program for mental health,” and “pay part or all of the cost of this treatment, as determined by the U.S. probation officer.” What Hungerford should do if she were too old or feeble to attend the mental health program, the judge failed to advise her. Certainly, requiring a defendant and a district judge to *1121 engage in a charade of this nature cannot increase respect for our system of justice.
The case at hand is precisely the type of case that should make Congress question what worthy ends are served by a cruel and inflexible sentencing scheme. In pondering this question, Congress would benefit by observing how Justice Kennedy, who can hardly be called soft-on-crime, let alone a liberal jurist, has come to reject mandatory minimum sentencing. Fifteen years ago, “in asserting the constitutionality of a mandatory [life] sentence,” for the possession of cocaine, Justice Kennedy “offered] no judgment on its wisdom.” Harmelin, 501 U.S. at 1007, 111 S.Ct. 2680 (Kennedy, J., concurring). But three years ago, he told the American Bar Association that “I can accept neither the necessity nor the wisdom of federal mandatory minimum sentences. In too many cases, mandatory minimum sentences are unwise and unjust.” Anthony M. Kennedy, Associate Justice, Supreme Court of the United States, Speech at the American Bar Association Annual Meeting (Aug. 9, 2003). Among Justice Kennedy’s chief concerns is that the “federal mandatory minimum statutes” transfer “sentencing discretion from a judge to an Assistant U.S. Attorney, often not much older than the defendant.” Id. Both this court in Harris[5] and I as a member of it, agree with Justice Kennedy that this transfer of discretion is “misguided,” and that “[m]ost of the sentencing discretion should be with the judge, not the prosecutors.” Id.
Hungerford’s case is a textbook example of how § 924(c) permits a prosecutor, but never a judge, to determine the appropriate sentence. Hungerford’s co-conspirator, Canfield, was the principal in all of the robberies — he owned and brandished the .22 pistol in each robbery, and testified that Hungerford had nothing to do with the firearm — yet he reached an agreement with the government and received a sentence of 32 years. On the other hand, Hungerford, who refused to plead guilty, in large part due to her mental illness, was aggressively charged, convicted, and sentenced to 159 years in prison. The prosecutor used his discretion to send the mentally-ill Hungerford to prison until she turns 208, while he administered a far lesser punishment — only one-fifth as great — to the principal who put the lives of others at risk. In Hungerford’s case, only the prosecutor and not the district judge had the authority to exercise discretion.
Hungerford received her 159-year sentence because she refused to enter into a plea agreement with the government. Had she been able and willing to do so, she undoubtedly would have received a significantly lesser term than the principal’s 32-year sentence. Hungerford tragically refused to cooperate with the government and plead guilty, most likely because her mental illness caused her to hold a fixed belief that she was innocent. Even after the jury convicted her, Hungerford repeatedly declared her innocence at sentencing, stating that “I have not done anything illegal. I did not go about with any gun. I don’t like them.... I didn’t take any money.... I honestly didn’t do it ... So please don’t do whatever you’re going to do to me for what you think I did, because I didn’t do it.” Also in light of her mental illness, Hungerford may not have even understood the nature of the offenses for which she was convicted. Yet, incredibly, the prosecutor believed that Hunger-ford received a fair sentence, reflecting both her criminal acts and her refusal to cooperate with the government. He told the judge that
*1122 counsel and the defendant can blame the prosecution, blame the Court, can blame the Congress. The jury convicted her. Early on in this process, the United States went to her attorney. We have some cx-edit on our side. We understood what the facts are. We suggested that cooperation would be there and that she cooperate against Mr. Canfield. She chose not to do that, Your Honor. Mr. Canfield chose another route. There is no one to blame here but Marion Hun-gerford herself....
But if Hungerford was in any way responsible for her absurd sentence, it was that her Borderline Personality Disorder prevented her from admitting her guilt and thus avoiding the imposition of a sentence of 159 years in prison. Surely, one cannot reasonably fault Hungerford for suffering from overwhelming and severe mental illness. Hungerford, in layman’s terms, may have explained her predicament as well as anyone possibly could when she proclaimed her innocence at sentencing and explained that:
my crime is not robbing, my crime isn’t hurting anybody, because I don’t do that, and my crime is not using a weapon to get money. My crime is being stwpid. That’s my crime. And it looks like I’m going to be faced with a lot of years for being stupid.
It is difficult to believe that anyone familiar with all of the facts and circumstances relating to Marion Hungerford’s commission of the offenses of which she was convicted would believe that an appropriate sentence is 159 years in prison. In sum, the result in Hungerford’s case, as well as our prior decisions applying the federal mandatory minimum sentencing laws, confirms why this court, Justice Kennedy, and many others have concluded that there is no wisdom or necessity in preserving the current mandatory minimum sentencing regime. The only question, then, is whether this and future Congresses will choose to listen and take appropriate action to return reason and rationality to our currently malfunctioning sentencing system.
Because I am required to do so, I concur in the judgment, but nothing more.
This attachment summarizes the testimony of Dr. William David Stratford, a forensic psychiatrist, who evaluated Hun-gerford. He testified that
1. Having previously completed between 6,000 and 10,000 prior psychiatric evaluations, interviewing Hungerford was “one of the most arduous, painful experiences in my life.” During the evaluation Hungerford was “very fragmented,” had “fixed patterns,” and she “[wjould at times look at the floor and be unresponsive for periods of ten minutes or so.”
2. Hungerford suffers from “severe borderline personality disorder,” described as “a line between psychosis and other diagnoses. It is a varying diagnosis. It is pervasive in stability of mood, actions. A person can be delusional. They can have fixed ideas that are incorrect. They can often be suicidal, moody, and have difficulty integrating the big picture.”
3. The psychological impairment which affected Hungerford is “one of the most severe psychological disorders. It’s probably more severe than suffering from schizophrenia.”
4. Hungerford’s “mental state significantly diminishe[d] her capacity to appreciate criminality and conformed conduct.”
5. Hungerford’s belief that she was not guilty is “a product of her mental illness.”
6. At sentencing, Hungerford did not have “a rational and factual understanding of what she’s doing here” in the courtroom.
7. Hungerford is a “follower” whose behavior is marked by “susceptibility to outside direction,” and suggestivity.
*1123 8. Hungerford does not presently constitute a danger to society, based on her 52 years in which she was not been hostile to others, and could benefit from treatment.

. See United States v. Parker, 241 F.3d 1114, 1117 (9th Cir.2001); United States v. Harris, 154 F.3d 1082, 1084 (9th Cir.1998).

. Harris, 154 F.3d at 1085.

. Id.

. We are foreclosed from holding the sentence to be in violation of the cruel and unusual punishment clause because of its severity by Harmelin and Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). Harmelin, 501 U.S. at 995, 1009, 111 S.Ct. 2680 (rejecting a requirement that the court consider mitigation or individual circumstances, and holding that a defendant's "sentence of life imprisonment without parole” for his first felony, possession of cocaine, "does not violate the Eighth Amendment”); Ewing, 538 U.S. at 30-31, 123 S.Ct. 1179 (holding that a defendant's "sentence of 25 years to life in prison” for a third strike consisting of the theft of three golf clubs "is not grossly disproportionate and therefore does not violate the Eighth Amendment’s prohibition on cruel and unusual punishments”).

. Harris, 154 F.3d at 1085 ("We feel a just system of punishment demands that some level of discretion be vested in sentencing judges to consider mitigating circumstances.”).