05-5652-cr
United States v. Rose

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: April 9, 2007                     Decided: July 20, 2007
                                           Errata Filed: August 10, 2007)

Docket No.  05-5652-cr


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES
        *Appellee,*

        -v.-

RENALDO M. ROSE
        *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


Before: LEVAL, CABRANES, and RAGGI, *Circuit Judges*.

        Appeal from a ruling by the United States District Court for the District of Connecticut (Burns, *J.*) declining to resentence defendant Renaldo Rose on the basis of the Supreme Court's revision of the sentencing laws in *United States v. Booker*, 543 U.S. 220 (2005).  Affirmed.

                                HAROLD H. CHEN, Assistant United States Attorney
                                (Kevin J. O'Connor, United States Attorney, District
                                of Connecticut, *on the brief*, James J. Finnerty &
                                William J. Nardini, Assistant United States Attorneys,
                                *of counsel*), Bridgeport, CT, for *Appellee*.

                                WILLIAM T. KOCH, JR., Lyme, CT, for *Defendant-*

1

LEVAL, *Circuit Judge*:

Defendant Renaldo Rose pled guilty to a five-count indictment charging him with robbing a delivery truck and with kidnapping a wealthy Connecticut resident. In sentencing Rose, the United States District Court for the District of Connecticut (Burns, *J.*) imposed an upward adjustment to his offense levels under U.S.S.G. § 3B1.4 based on Rose's use of a minor in connection with these crimes. Among other contentions, Rose contends in this appeal that the adjustment was inappropriate because the minor was a seventeen-and-a-half year old drug dealer who willingly participated in the robbery and kidnapping and was not a minor who needed protection from exploitation. We reject Rose's contention that § 3B1.4 only applies where the minor is vulnerable or predisposed against crime.

**Background**

**A.     The Robbery and Kidnapping**

The following description is taken from the Pre-Sentence Report ("PSR").[1] In October 2002, Rose approached his long-time friend Shemone Gordon with a plan to kidnap a wealthy individual and hold him for ransom. Rose searched over the internet and compiled a list of potential targets. He eventually focused on Edward Lampert, a Greenwich, Connecticut, resident and operator of an investment fund. Rose initially intended to kidnap Lampert's child, believing that Lampert would quickly pay a ransom without involving the police. Eventually, however, Rose decided to kidnap

---

[1] Though Rose disputed other aspects of the PSR, he made no objection in the district court to its description of his offense conduct.

2

Lampert instead.

In preparation for the kidnapping, Rose purchased an air pistol and a Mossberg shotgun. He and Gordon approached Gordon's former girlfriend who worked as a desk clerk at a hotel, and they asked her to help them obtain credit card numbers from hotel guests. They explained that they needed the numbers to help them purchase necessary supplies for the kidnapping. Rose and Gordon used the credit card numbers to purchase bullet proof vests, flexible plastic handcuffs, masks, and services from fee-based computer search companies.

In December 2002, Gordon, who was involved in drug trafficking, befriended two fellow dealers, Devon Harris and Lorenzo Jones. Jones was seventeen-and-a-half years old at the time. Jones accompanied Rose and Gordon as they practiced firing the Mossberg shotgun.

On December 24, 2002, Rose, Gordon, Harris, and Jones drove together in Rose's car, looking for a United Parcel Service ("UPS") truck to rob. Jones carried a .22 caliber revolver, which he had been given by Harris. Gordon, Harris, and Jones exited the car and entered a UPS truck. Jones pointed the revolver at the driver and demanded the keys to the truck. The driver was forced to lie on his stomach in the truck's cargo area, blindfolded, and bound using the plastic handcuffs. Gordon, Harris, and Jones took money from the truck driver and four packages from the cargo area. Rose then drove the group to Gordon's residence, where they opened the packages.

The UPS robbery was designed in part for Rose to test Harris and Jones and determine whether they would be suitable colleagues for the kidnapping of Lampert. Shortly after the robbery, Rose and Gordon asked Harris whether he wanted to participate in a kidnapping in exchange for $90,000. Rose also asked Jones whether he was interested in participating, "telling [Jones] that he

3

liked how Jones handled himself with the gun during the robbery."

Rose traveled to Greenwich on several occasions to surveil Lampert's residence and place of business. Rose rented several different minivans in preparation for the kidnapping. Gordon, Jones, and Harris accompanied Rose on some of these trips. On at least one occasion, the group traveled to Greenwich intending to abduct Lampert but aborted the plan when Lampert left his office accompanied by another individual.

On January 10, 2003, Rose, Gordon, Harris, and Jones drove to a rental car agency and rented a Ford Expedition. They put flexible plastic handcuffs, masks, a shotgun, two-way radios, and an air pistol in the car. Rose drove the group to Greenwich, and they parked in the parking lot at Lampert's office. Carrying the shotgun and air pistol, Gordon and Jones got out of the car and hid, waiting for Lampert to walk from the office building to his car. Rose gave Harris a picture of Lampert and told him to look for Lampert among those walking in the parking lot.

After several hours, Rose saw Lampert walking to his car. Rose used the two-way radio to tell Gordon and Jones to get him. Gordon and Jones, who were wearing masks, walked up to Lampert, pointed the shotgun and air pistol at him, and forced him into the rear of the Ford Expedition. Lampert was handcuffed with the plastic restraints and then blindfolded. While driving away, Rose instructed the others to remove and throw away Lampert's personal items.

Gordon rented a motel room. Lampert was taken into the bathroom, where he was kept handcuffed and blindfolded. Rose and Gordon spoke with Lampert about obtaining a ransom for his release, demanding $1 million. Rose recorded a message from Lampert to his wife, and then drove to New York along with Jones to a pay phone, where Rose played the message to Lampert's

4

wife and spoke briefly to her. Lampert overheard Rose and Gordon disagreeing about whether to release him. Lampert identified Gordon as the "let him go guy" and Rose as the "bad day guy" – a reference to Rose's comment that he was having a bad day because the police had become involved.

Eventually, Lampert agreed to pay $40,000 to secure his release. On January 11 or 12, Lampert was driven to Greenwich and let go. Shortly thereafter, Gordon, Harris, and Jones were arrested at the motel. Rose fled to Canada, where he was detained and then sent back to the United States, where he was arrested.

**B.      Rose's Plea and Sentencing**

In April 2003, a grand jury returned a five-count Superseding Indictment. It charged Rose with interfering with interstate commerce by extortion and robbery (counts one, two, four, and five), and using and carrying a firearm in connection with a crime of violence (count three). Rose pleaded guilty to all five counts. He was sentenced on May 17, 2004. The court imposed concurrent sentences of 121 months on counts one, two, four, and five, and 60 months consecutive on count three.[2] Thus, the total effective sentence was 181 months. In arriving at Rose's sentence, the district court adopted the Sentencing Guidelines calculations made in the PSR. The PSR's calculations included upward adjustments based on Rose's use of a minor during the UPS robbery and the kidnapping. It also included upward adjustments for Rose's leadership role in the robbery and kidnapping.

---

[2] Rose was subject to a seven-year mandatory minimum under count three, *see* 18 U.S.C. § 924(c)(1)(A)(ii), but because he had been advised in his plea agreement and during his plea allocution that he faced only a five-year mandatory minimum, the Government requested that the district court apply the five-year term, which the court did. This aspect of Rose's sentence is not at issue on appeal.

On Rose's appeal, this court remanded pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), for the district court to consider whether it would have sentenced differently had the Supreme Court already decided *United States v. Booker*, 543 U.S. 220 (2005). After receiving supplemental briefing, the district court declined to resentence.

**Discussion**

On appeal, Rose raises three arguments: (A) that the district court failed to consider all relevant factors in imposing the initial sentence and in declining to change the sentence on remand; (B) that the upward adjustment for use of a minor was improper; and (C) that the upward adjustment for Rose's leadership role in the robbery was improper.

**A.     Sentencing Factors**

Rose argues that when it imposed the initial sentence and on the *Crosby* remand, the district court failed to consider the sentencing factors listed at 18 U.S.C. § 3553(a). The court did not specifically state at the initial sentencing hearing that it had considered the § 3553(a) factors. Moreover, on the *Crosby* remand, the court did not hold an in-court hearing, but issued a written ruling, in which it stated:

> The court has reviewed the memoranda filed by the defendant and the government and concludes that the sentence imposed is consistent with the facts of the offense and that a nontrivially different sentence should not and will not be imposed.

Rose argues that this statement was insufficient demonstration that the court gave requisite consideration to the § 3553(a) factors.

We disagree. In *Crosby*, we expressly rejected the notion that a sentencing judge must make a "specific articulation" of the manner in which the § 3553(a) factors have been considered. *Crosby*,

6

397 F.3d at 113. "As long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance, we will accept that the requisite consideration has occurred." *United States v. Fernandez*, 443 F.3d 19, 29-30 (2d Cir. 2006) (quoting *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005)).

Absent any indication to the contrary, we assume that the court understood and observed its obligations. *Id.* at 30. There is no indication that the district court was unaware of its sentencing options or its obligation to consider the factors enumerated in § 3553(a), either at the initial sentencing or on the *Crosby* remand. The fact that the court made no mention of § 3553(a) does not, by itself, warrant the conclusion that the mandatory factors were not considered.

**B.      Use of a Minor**

The Sentencing Guidelines provide for a two-level upward adjustment if the defendant "used or attempted to use a person less than eighteen years of age to commit the offense." U.S.S.G. § 3B1.4. The commentary explains that "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.* Application Note 1; *see Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). In addition, we have held that the § 3B1.4 enhancement applies where the use of a minor by a co-conspirator was a reasonably foreseeable act in furtherance of the conspiracy. *See United States v. Lewis*, 386 F.3d 475, 480 (2d Cir. 2004). The district court imposed upward adjustments for Rose's

7

use of a minor – Lorenzo Jones – in the UPS robbery and kidnapping.

We conclude that Rose's conduct comes within the terms of the adjustment specified in § 3B1.4 for use of a minor. Jones, who was seventeen-and-a-half years old, became part of the criminal undertaking that Rose conceived of and directed. Jones accompanied Rose and Gordon as they practiced firing their shotgun. Jones also accompanied Rose, Gordon, and Harris when Rose drove the men to find a UPS truck to rob. Once a suitable vehicle was located, and before Gordon, Harris, and Jones left Rose's car to confront the truck driver, Harris handed Jones a .22 caliber revolver, thereby "encouraging" the minor's participation in the crime. By itself, this evidence supports a conclusion that Rose knew or could reasonably foresee co-conspirator Harris's use of Jones to commit the robbery. In fact, the totality of the evidence permitted the district court to infer that Rose himself utilized Jones in the UPS robbery and tested him to determine whether he would be suitable to participate in the kidnapping. Rose praised Jones's conduct during the robbery and recruited Jones for the kidnapping. Rose orchestrated the kidnapping and issued orders to the group, including Jones – for instance, to throw away Lampert's personal items. There is ample factual support for the district court's conclusion that Rose "used" Jones to facilitate his crimes.

Rose argues that Jones's participation was that of a partner, not a subordinate. Relying on *United States v. Butler*, 207 F.3d 839 (6th Cir. 2000), and *United States v. Parker*, 241 F.3d 1114 (9th Cir. 2001), Rose argues that a sentence enhancement under § 3B1.4 is warranted only where a minor is exploited. Because Jones was "a 6' tall, muscular, [seventeen-and-a-half] year old adult-appearing, gun toting, drug dealing criminal" who served as a willing partner in the robbery and kidnapping, Rose contends that "Jones was clearly not a minor needing protection from being

exploited" and was therefore not within the intent of section 3B1.4.

*Butler* and *Parker* do not support Rose's argument. They stand for a considerably narrower proposition that is not helpful to Rose. They rule that a defendant's mere participation in a criminal venture with a minor is insufficient, by itself, to justify an enhancement under § 3B1.4. *Parker*, 241 F.3d at 1120; *Butler*, 207 F.3d at 848. To warrant the increase under § 3B1.4, the defendant must do more – such as "take[] affirmative acts to involve [the] minor," *Butler*, 207 F.3d at 848, or "command, encourage, intimidate, counsel, train, procure, recruit, solicit, or otherwise actively involve" the minor, *Parker*, 241 F.3d at 1121. Neither opinion suggests that § 3B1.4 applies only if the minor is vulnerable, child-like in appearance, or predisposed against crime. In the present case, Rose solicited, recruited, procured, trained, encouraged, and commanded Jones. Under the standards explained in *Butler* and *Parker*, the upward adjustment of § 3B1.4 was applicable to his case. The fact that the minor was a large, seventeen-and-a-half year old drug dealer who participated eagerly in the crimes does not make § 3B1.4 inapplicable.

**C.     Leadership Role in the Robbery**

The Sentencing Guidelines provide for a two-level increase in offense level when a defendant "was an organizer, leader, manager, or supervisor in" criminal activity. U.S.S.G. § 3B1.1(c). The district court imposed this leadership-role adjustment for Rose's participation in both the UPS robbery and the kidnapping. Rose concedes that he had a "planning and leadership role in the . . . kidnapping," but contends that he had only a minor, non-leadership role in the robbery.

The evidence, however, supports the district court's conclusion that Rose took a leadership role in the UPS robbery. The two crimes were part of a common scheme in that Rose used the

robbery as a testing ground to determine the suitability of Harris and Jones for participation in the kidnapping. The two crimes were committed in close proximity in time. Equipment purchased by Rose was used in both. It is undisputed that Rose was the clear leader of the kidnapping. In the absence of evidence indicating that the leadership in the robbery was otherwise, the district court could reasonably have found, based on all the evidence, that Rose was a leader in the robbery. We reject Rose's argument.

## Conclusion

The judgment of the district court is AFFIRMED.