# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JASON LEE ALBRITTON,
            *Defendant-Appellant.*

No. 09-30436

D.C. No.
4:09-cr-00041-
SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
August 4, 2010—Seattle, Washington

Filed September 16, 2010

Before: John T. Noonan, David R. Thompson and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Thompson;
Dissent by Judge Berzon

14221

## COUNSEL

Anthony R. Gallagher, Great Falls, Montana, for the appellant.

Cyndee L. Peterson, Assistant United States Attorney, Missoula, Montana, for the appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Jason Lee Albritton pleaded guilty to Credit Union (Bank) Robbery, in violation of 18 U.S.C. § 2113(a). Albritton was sentenced to 105 months of incarceration to run consecutive with any other undischarged term of imprisonment, followed by three years of supervised release.

On appeal, Albritton challenges three aspects of his sentence. *First*, he argues the court improperly determined that he "otherwise used" a dangerous weapon, rather than merely "brandished or possessed" the weapon, and, thus, his offense level was improperly increased by four (4). *See* U.S. Sentencing Guidelines Manual (hereinafter "U.S.S.G.") § 2B3.1(b)(2)(D) (addressing an "otherwise used" dangerous weapon); § 2B3.1(b)(2)(E) (imposing an increase of three (3) offense levels for a "brandished or possessed" dangerous weapon). *Second*, he argues that, because there was no "sustained focus" on a victim, the court improperly increased his offense level by two (2) for "physically restrain[ing]" a victim. *See* U.S.S.G. § 2B3.1(b)(4)(B). *Third*, Albritton challenges the consecutive nature of his sentence, arguing that it should be concurrent, or at least partially concurrent, to another term he is serving.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In his briefing to this court, Albritton admits that in com-

mitting the credit union robbery he held a BB pistol while advancing toward a teller who was on the phone. He had a black bag he placed on the counter. The teller stepped back and whispered into the phone, "We're being robbed." Albritton ordered the teller to put down the phone and shouted, "Down, Down!" Albritton then turned toward the front door and entered the office of Debi Zeiss, a loan officer. Upon his knocking, she turned around to see a gun pointed at her.[1] Albritton said, "Money, hurry." He followed Zeiss out of her office, holding the BB pistol.

Upon Albritton's request, we watched a surveillance video of the robbery. The key image of the silent video shows the scene from over and behind the left back corner of the teller's area, the lobby, the front door, and Zeiss' office. A ski-masked man with a black bag enters and advances immediately to the teller and toward the camera, holding a gun at eye level pointed at the teller. He sets his bag on her counter, appears to gesture across the room, and then points the gun again at the teller, holding the gun above eye level extended out over the counter. He then lowers the gun, but still points it at the teller until she moves toward and under the camera, disappearing from view.

The man then turns around and moves away from the camera and toward Zeiss' office. He walks about 10 to 20 feet across the lobby, and points the gun at Zeiss. She does not appear to notice the man until he gets within a few feet of her door, when she looks up. She gets up as he steps into her office, and he motions across the room with the gun. Zeiss leaves the office before him and, with him following closely behind her, she walks back across the lobby in the indicated direction, disappearing off the right side of the image. During

---

[1] Despite this admission in Albritton's appellate briefing, at oral argument Albritton's attorney contended that Albritton pointed his finger, not the gun, at Zeiss. The surveillance video, however, shows Albritton pointing the gun at Zeiss, at least for a portion of their interaction.

this walk, the man does not appear to directly point the gun at Zeiss until about half-way across the scene.

A few seconds later, in the foreground of the video behind the teller's desk, the back of the teller's raised hand briefly appears, and then Zeiss briefly reappears walking toward and under the camera, apparently joining the teller's position. The man also reappears in the foreground of the video, but he does not again point the gun toward the women—he pulls money from two drawers, collects the cash in his black bag, and leaves the credit union.

The district court watched the surveillance video at Albritton's sentencing hearing and imposed a within-guidelines sentence. Consistent with the presentence report's recommendation, the district court sentenced Albritton to 105 months of incarceration to run consecutive with any other undischarged term of imprisonment, followed by three years of supervised release. At the time of sentencing, Albritton was already serving a 51-month term for an armed bank robbery conviction in another state. Albritton appeals his sentence.

## DISCUSSION

### I. "Otherwise Used" a Dangerous Weapon

We review de novo the district court's interpretation of the Guidelines, and review for clear error the court's factual findings. *United States v. Alderman*, 601 F.3d 949, 951 (9th Cir. 2010). We have not decided whether the application of the Sentencing Guidelines to the facts is reviewed de novo or for abuse of discretion. *United States v. Laurienti*, ___ F.3d ___, 2010 WL 2473573, *19 (9th Cir. 2010).

With regard to dangerous weapons, the Sentencing Guidelines' Application Notes define "brandished" and "otherwise used" as follows:

- **_Brandished_**: "[A]ll or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present."[2]

- **_Otherwise Used_**: "[T]he conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon."

U.S.S.G. § 1B1.1 cmt. n.1(C) (defining "brandished"); *id.* § 1B1.1 cmt. n.1(I) (defining "otherwise used").

In support of the contention that Albritton merely "brandished" the pistol, his attorney argues that the "entire robbery" lasted less than three minutes, the BB pistol was displayed for "no more than a minute-and-a-half," and the pistol was brandished for "probably less than 10 or 15 seconds." In addition, during his change of plea hearing in the district court, when asked if he pointed the BB pistol at anyone, Albritton stated: "I can't recall actually pointing it. I didn't— it wasn't a real gun; so I didn't want them to even look at it. I just ran in and yelled. And I think confusion just set in then." This statement, however, is refuted by the surveillance video, which shows Albritton pointing the gun directly at each of the two credit union employees.

Albritton erroneously relies on *United States v. Moerman* for the proposition that a defendant "otherwise used" a weapon only when his or her "actions and/or statements directly threatened an individual with the use of the firearm

---

[2]This definition of "brandished" became effective on November 1, 2000. *See* U.S.S.G. app. C vol. 2 amend. 601 p.73 (Nov. 1, 2003).

if the person being threatened did not comply with the defendant's demands." 233 F.3d 379, 381 (6th Cir. 2000). *Moerman* was decided under a prior version of the Guidelines, which expansively defined "brandished" as meaning "that the weapon was pointed or waved about, or displayed in a threatening manner." *Id.* at 380. After revision of the Guidelines' definition of "brandished," the Sixth Circuit recognized that *Moerman*'s "distinction [between explicit and implicit threats] is no longer supported." *United States v. Bolden*, 479 F.3d 455, 462 (6th Cir. 2007).

**[1]** In *United States v. Villar*, the First Circuit distinguished between the current Guidelines' definitions of "brandished" and "otherwise used." 586 F.3d 76, 90 (1st Cir. 2009). According to *Villar*, a weapon is "otherwise used" once there is "specific leveling" of the weapon at another person. *Id.* "Brandishing" is a "general display of weaponry." *Id.* (explaining this distinction, drawn in *United States v. LaFortune*, 192 F.3d 157, 161 (1st Cir. 1999), survives the Guidelines' revision, as it is "fully consistent with the amended definition of 'brandished' ").

**[2]** *Villar*'s demarcation between "brandished" and "otherwise used" is consistent with dictionaries, which define the verb "brandish" as: "1. To wave or flourish (a weapon, for example) menacingly. 2. To display ostentatiously." The American Heritage Dictionary of the English Language 224 (4th ed. 2000). *See also* The Random House Dictionary of the English Language 254 (2d ed. 1987) (defining the verb "brandish" as "to shake or wave, as a weapon; flourish"). We agree with the First Circuit's distinction and adopt it.

**[3]** Applying that distinction to this case, it is clear that Albritton "otherwise used" the BB pistol. Albritton pointed the pistol directly at the teller and ordered her "Down, Down!" In addition, Albritton specifically leveled the weapon at loan officer Zeiss in directing her across the room. Thus,

we affirm the district court's offense level increase on this ground.

## II.   "Physically Restrained" a Victim

The Guidelines provide that, "if any person was physically restrained to facilitate commission of the offense or to facilitate escape," the offense level shall be increased by two. U.S.S.G. § 2B3.1(b)(4)(B). The Guidelines define "physically restrained":

> ***Physically restrained***: "[T]he forcible restraint of the victim such as by being tied, bound, or locked up."

U.S.S.G. § 1B1.1 cmt. n.1(K). *See United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir. 2001) ("These examples are illustrative and not exclusive.").[3]

**[4]** The Ninth Circuit has observed, "cases holding that a defendant physically restrained his victims usually involve a *sustained focus* on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere." *See id.* A "sustained focus" on a victim exists when, at gunpoint, the victim is ordered into a back room, *United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir. 1998), repeatedly forced to get down and get up, *United*

---

[3]Commentary to the robbery Guideline explains that it "provides an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up." U.S.S.G. § 2B3.1 cmt. background. At oral argument, Albritton's attorney noted that the "physically restrained" definition includes restraints "*such as* by being tied, bound, or locked up" (emphasis added), while the robbery commentary excludes the "such as" language.

Albritton's attorney argues the omission of the "such as" language indicates that the robbery Guideline's list of physical restraints excludes all non-listed restraints. We disagree. The Application Notes for the robbery Guideline specifically state that "physically restrained" is defined in the commentary to U.S.S.G. § 1B1.1. U.S.S.G. § 2B3.1 cmt. n.1.

*States v. Thompson*, 109 F.3d 629, 641 (9th Cir. 1997), or forced to walk some distance (i.e., from the teller area to the vault area), *id.* (alternative holding). It is not enough if the defendant briefly points a gun at a victim and orders her once to get down. *Parker*, 241 F.3d at 1118-19 (explaining that Congress must have meant something more, because "nearly all armed bank robberies will presumably involve such acts").

**[5]** Albritton argues that, because there was no "sustained focus" on Zeiss, she was not "physically restrained." However, the video clearly shows a sustained focus on Zeiss. Albritton directed Zeiss across and around the office. He followed right behind her, gun in hand. Thus, we affirm the district court's offense level increase on this ground.[4]

## III.   Consecutive Nature of Albritton's Sentences

Albritton argues the district court erred in requiring that his sentence run consecutive to any other undischarged term of imprisonment. In particular, Albritton argues that two of his convictions—the Montana crime at issue here and an armed bank robbery in Florida, for which he was serving 51 months at the time of sentencing in this case—were essentially one course of conduct, because they involved "very similar" modi

---

[4]Albritton argues the physical restraint enhancement constituted impermissible double-counting with the enhancement for him having "otherwise used" the BB pistol. This argument is frivolous.

The enhancements address different harms, and the conduct addressed by each enhancement is distinct. *See Parker*, 136 F.3d at 654 ("Double counting is permissible if it accounts for more than one type of harm caused by the defendant's conduct, or where each enhancement of the defendant's sentence serves a unique purpose under the guidelines."); *United States v. Rucker*, 178 F.3d 1369, 1373 (10th Cir. 1999) (citing *Parker* and addressing the same enhancements at issue in this case; explaining that, because pointing a gun at a victim does not necessarily physically restrain him, and because a victim can be physically restrained without a weapon, the addressed conduct causes different harms and the enhancements do not overlap).

operandi and occurred close in time (less than 6 months apart).

**[6]** Albritton does not show the district court clearly erred in rejecting his "one course of conduct" argument. The crimes involved different victims, are clearly distinct in time and place, and were not shown to have occurred with regularity. *See United States v. Hahn*, 960 F.2d 903, 907, 910 (9th Cir. 1992) (reviewing for clear error and stating, "the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity").[5]

**AFFIRMED**.

---

BERZON, Circuit Judge, dissenting:

Although I agree with, and concur in, the majority opinion with regard to the "physically restrained" Guideline, U.S.S.G. § 2B3.1(4)(B), and Albritton's consecutive sentence, I respectfully dissent with regard to the question whether Albritton "otherwise used" a dangerous weapon. Reading the Guidelines' definition of "brandished" as a whole and in context, pointing a gun (or other dangerous weapon) at someone is brandishing it, not otherwise using it, no matter whether the gun is pointed fleetingly or not, and no matter whether the pointing is accompanied by verbal threats or not. Although I recognize that other circuits have held otherwise — particularly the First Circuit in *United States v. Villar*, 586 F.3d 76, 90 (1st Cir. 2009), a case heavily relied upon by the majority — the issue is an open one in this circuit.

---

[5]Albritton contends the imposition of consecutive sentences is inconsistent with the Sentencing Guidelines' goal of diminishing sentencing disparity. Because Albritton makes no showing of how his sentence is unfair, we reject this contention.

**I**

The majority opinion interprets the term "brandish" simply by looking to the dictionary definition of "brandish," viewing the term in isolation. Even in carrying out this limited endeavor, it errs.

The definition upon which the majority relies includes " '[t]o . . . flourish (a weapon . . .) menacingly' " and " '[t]o display ostentatiously.' " Majority Op. at 14228 (quoting The American Heritage Dictionary of the English Language 224 (4th ed. 2000). Neither definition quoted specifies whether the flourishing or displaying has to be "in the air," so to speak, as the majority assumes, rather than directed at a specific person, as is signaled by pointing a gun at that person. But "menacingly" certainly suggests a conveyed intent to use the weapon, rather than just to show it off. One does not "brandish" a weapon by displaying it in the Tower of London as an example of the contents of King Henry VIII's arsenal. I therefore see no basis for concluding that pointing a gun at someone with the implicit threat to use it does not constitute "brandishing" the weapon. The dictionary definition does not dictate the majority's conclusion.

More importantly, there would have been no need for a separate definition in the Guidelines' § 1B1.1 Application Notes if all that was intended by the term "brandished" was the out-of-context dictionary definition. We all know how to use a dictionary. *See Schwab v. Reilly*, 130 S. Ct. 2652, 2662 (2010) (noting that dictionary definitions are not useful where there is a statutory definition). The definition actually given in the Application Notes contains critical language not acknowledged in or discussed by *Villar* or by the majority in this case — namely, the display must be "to another person, in order to intimidate that person."[1] That language adds three

---

[1]I note that the Guidelines' definition of "brandished," as a whole, does not comport with the majority's dictionary definition for an independent

details to the dictionary definition, all of which confirm that pointing a dangerous weapon threateningly comes within the Guidelines' definition of "brandished."

First, the Guidelines' definition adds directionality — the display must be "*to* another person." U.S.S.G. § 1B1.1 cmt. n.1(C) (emphasis added). Pointing, of course, involves directing a weapon *to* a person. The directional term "to" is thus consistent with the inclusion of pointing a weapon at someone within the broader term, "brandishing."

Second, the Guidelines' definition adds specificity of target — the display must be not to the world at large, but "to *another person.*" *Id.* (emphasis added). Moreover, the display must take place "in order to intimidate *that person.*" This specificity precludes the majority's conclusion that " '[b]randishing' is a 'general display of weaponry'," not a " 'specific leveling' of the weapon at another person." Majority Op. at 14228 (quoting *Villar*, 586 F.3d at 90). The Guidelines' definition is squarely to the contrary: A "general display of weaponry" is expressly *not* covered by the Guidelines' definition of "brandished," as the display must be "to another person," and for the purpose of intimidating *that* person. For these same reasons, the " 'specific leveling' of [a] weapon at another person" is quite expressly covered.[2]

Finally, the phrase ignored in the majority opinion adds a

reason not here directly applicable: The Guidelines' definition says that the "weapon does not have to be directly visible," although it must be present and made known. U.S.S.G. § 1B1.1 cmt. n.1(C). A hidden weapon is neither "wave[d]" nor "flourishe[d]" nor "displaye[d] ostentatiously," and so does not come within the dictionary definition the majority relies upon. As this example confirms, the Guidelines' definition of "brandished" does not simply mimic the dictionary.

[2]Perhaps the majority intends to draw a distinction between displaying a weapon "*at* another person" and "*to* another person." If so, the distinction escapes me; one can surely display something to someone by just flashing it at him, for example.

mental element — the display must take place "in order to *intimidate that person*." U.S.S.G. § 1B1.1 cmt. n.1(C). This feature confirms that "brandishing" involves placing a particular individual in fear. Moreover, "intimidate" connotes not simply frightening someone, but frightening them so as "to force [them] to or deter [them] from some action." The Oxford English Dictionary, Vol. VIII, at 8 (2d ed. 1989). In short, the notion that "brandishing" does not involve using focused fear of harm to induce a particular person to do a particular thing, central to the majority opinion, simply will not wash.

There is the suggestion in the majority opinion that the current Guidelines' definition of "brandished" cannot include pointing a weapon at someone, because earlier versions of the definition expressly included "pointing," while the current one does not. In context, the proper inference is the opposite — that the change in the Guidelines' definition preserved, rather than discarded, the inclusion of pointing as part of the definition.

The amendment, which took place in 2000, replaced the phrase "that the weapon was pointed or waved about, or displayed in a threatening manner," U.S.S.G. § 1B1.1 cmt. n.1(C) (1999) (amended Nov. 1, 2000), with "that all or part of the weapon was displayed, or the presence of the weapon was made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." U.S.S.G. § 1B1.1, cmt. n.1(C) (2000). The addition thereby added all of the critical elements I have discussed — directionality, specificity of targeted person, and intention to coerce. Having added those elements, all of the features conceivably particular to "pointing" were included, as they were not previously, and there was no reason to single out "pointing" as a particular form of brandishing any longer. *See* The Oxford English Dictionary, Vol. XI, at 1135 (defining "point" as, *inter alia*, "[t]o direct (the finger, a weapon,

etc.) at, to level or aim (a gun) at; to direct (a person, his attention, or his course) to").

Moreover, if the amendment were given the import suggested, then one would have to conclude that "waving" as well as "pointing" was no longer covered. The word "waved" appears in the earlier version but not the present one. Yet, the premise of the majority's opinion seems to be that waving *is* covered but pointing at a particular person coercively is not — why, we are not told. The more appropriate conclusion is that the term "display" now includes both waving *and* pointing.

Further, the explanation given by the United States Sentencing Commission when it adopted the current definition of "brandished" confirms that no confining change was intended. The Commission explained that a statutory definition of "brandish" had been recently adopted and codified at 18 U.S.C. § 924(c)(4). *See* U.S.S.G. § 1B1.1 hist. notes (2000 amends.). In that light, the Commission stated that the purposes of amending the Guidelines definition were to "avoid confusion" by conforming to the new statute's definition and to "increase punishment in some circumstances," by adding a reference to hidden weapons whose presence is made known. *Id.* There is no indication whatever that a third purpose was to take away an entire category of previously covered actions — display by pointing a weapon at a particular person.

Moreover, and critically, if "brandishing" did not include coercive pointing, then the same limitation would presumably apply to 18 U.S.C. § 924, as the Sentencing Commission meant to follow the § 924 definition. *See* 18 U.S.C. § 924(c)(4) (defining the term "brandish" as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person"). But § 924(c)(4) has been interpreted to include coercive pointing of a firearm. *See United States v. Beneford*,

574 F.3d 1228, 1234 (9th Cir. 2009) (applying § 924(c)(1)(A)(ii)'s "brandished" enhancement where the defendant "turned and pointed the handgun at [the teller]") (alteration in original). Indeed, if "brandished" does not include coercive pointing of a firearm for § 924(c) purposes, then there is no applicable sentencing enhancement for such coercive pointing: The statute provides increased mandatory minimums only of seven and ten years, respectively, for "brandish[ing]" or "discharg[ing]" a firearm; if neither term applies, then the mandatory minimum for use or possession of a firearm in furtherance of certain crimes is five years. 18 U.S.C. § 924(c)(1)(A). As the Sentencing Commission's purpose in its 2000 amendment to the Guidelines was to conform the Guidelines' definition to that contained in § 924(c), the consideration that the statute's definition of "brandished" applies to coercive pointing should be dispositive in this case.

In sum, the current Sentencing Guidelines' definition of "brandished" includes coercive pointing of a gun or other dangerous weapon through its use of terms indicating directionality, specificity of victim, and a mental element of intended coercion. The majority's assumption otherwise, in reliance on *Villar*, has no basis.

## II

Having so concluded, I now turn to the impact of this conclusion on the ultimate issue with regard to the dangerous weapon enhancement in this case: Did Albritton "brandish" the BB pistol he was carrying, or did he "otherwise use" it? If the former, his offense level would be increased by three levels; if the latter, the increase would be four levels.[3] The Guidelines' definition of "otherwise used" is behavior that

---

[3]There is a parallel but more nuanced distinction with regard to actual firearms — an enhancement of seven levels for a discharged firearm, six levels if a firearm is "otherwise used," and five levels if it is "brandished or possessed." U.S.S.G. § 2B3.1(b)(A)-(C).

"did not amount to [the] discharge of a firearm but was more than brandishing, displaying, or possessing [the] firearm or other dangerous weapon." U.S.S.G. § 1B1.1 cmt. n.1(I). If, as explained above, coercive pointing of a gun, phony or real, at someone is "brandishing" it, then it cannot be "otherwise using" it.

Given that structure, one could object to my reading of the definition of "brandished" if, as used in the operative Guideline, my interpretation turned out to swallow up the "otherwise used" category, leaving it a nullity. But that is certainly not so. For dangerous weapons other than firearms, my understanding of "brandished" leaves "otherwise used" covering all the ordinary uses of most dangerous weapons that are not firearms — stabbing with a knife, for example, or cutting with an axe, or hitting with a hammer. And for firearms, "otherwise used" would include, for example, pistol whipping. So there's no reason to bend the very precise Guidelines' definition of "brandished" out of shape to assure a sensible gradation of suggested punishment within the operative Guideline, and I would not do so.

## Conclusion

I would hold that pointing a BB pistol at someone, coercively or otherwise, constitutes brandishing, not otherwise using, the weapon, giving rise to a three—rather than four—level sentencing enhancement. I therefore respectfully dissent.