**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD JOHNSON, individually and
on behalf of all others similarly
situated,

    *Plaintiff-Appellee,*

  v.

JAMES D. ALJIAN; KIRK KERKORIAN;
TRACINDA CORPORATION,

    *Defendants-Appellants.*

No. 04-56997

D.C. No.
CV-03-05986-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted
January 8, 2007—Pasadena, California

Filed June 20, 2007

Before: Diarmuid F. O'Scannlain, Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain

7395

**COUNSEL**

Eric Landau, McDermott Will & Emery LLP, Irvine, California, argued the cause for defendants-appellants James D. Aljian, Kirk Kerkorian, and Tracinda Corporation; Shawn M. Harpen, McDermott Will & Emery LLP, Irvine, California, and Terry Christensen and Eric P. Early, Christensen, Miller, Fink, Jacobs, Glasser, Weil & Shapiro, LLP, Los Angeles, California, were on the brief.

Christopher L. Nelson, Schiffrin & Barroway, LLP, Radnor, Pennsylvania, argued the cause for plaintiff-appellee Donald Johnson; Katharine M. Ryan, Schiffrin & Barroway, LLP, Radnor, Pennsylvania, and Christopher Kim and Lisa J. Yang, Lim, Ruger & Kim, LLP, Los Angeles, California, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide a case of first impression involving insider trading liability under the federal securities laws.

I

On August 21, 2003, Donald Johnson,[1] on behalf of himself and all other persons who purchased the common stock of DaimlerChrysler AG ("DaimlerChrysler") on nine different dates between March 19, 1999, and June 11, 1999, brought this as-yet-uncertified securities fraud class action against James D. Aljian, Kirk Kerkorian, and Tracinda Corporation.[2] Kerkorian is an executive and sole shareholder of Tracinda.[3] Aljian is an executive of Tracinda and a member of the DaimlerChrysler Shareholder Committee.

The amended complaint[4] alleges (1) illegal insider trading against all defendants in violation of Section 10(b)[5] of the

---

[1]Although Johnson is the named plaintiff in this case, the district court appointed Glenn Rumsey to be the lead plaintiff on November 20, 2003. We refer to the plaintiff-appellee as "Johnson."

[2]We refer collectively to defendants-appellants Aljian, Kerkorian, and Tracinda as the "defendants."

[3]"In determining whether the complaint states a claim upon which relief could be granted, we assume the facts alleged in the complaint to be true." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 998 (9th Cir. 2002).

[4]The amended complaint was filed on January 23, 2004, and states substantially similar allegations of insider trading and the same causes of action as the initial complaint filed on August 21, 2003.

[5]Section 10(b) makes it "unlawful for any person . . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe." Exchange Act § 10(b), 15 U.S.C. § 78j(b).

Exchange Act of 1934 ("Exchange Act"), and Rules 10b-5[6] and 10b5-1[7] promulgated thereunder; (2) control person liability against Aljian and Kerkorian based on Section 20(a)[8] of the Exchange Act; and (3) contemporaneous trading liability against all defendants based on Section 20A of the Exchange Act.[9]

The amended complaint alleges that Aljian attended a DaimlerChrysler Shareholder Committee Meeting, where he was given a board report entitled "DaimlerChrysler Operative Planning 1999-2001" and marked "strictly confidential." The report projected a "significant" decline in free cash flows. The amended complaint further claims that Aljian placed the report in Tracinda's central files, which were readily accessible to Kerkorian. The amended complaint does not allege that Aljian informed Kerkorian of the projected decline in free cash flows, but alleges that he knew that Kerkorkian had unrestricted access to the report.

[6]Rule 10b-5 makes it "unlawful for any person . . . [t]o employ any device, scheme, or artifice to defraud . . . . in connection with the purchase or sale of any security." Rule 10b-5, 17 C.F.R. § 240.10b-5.

[7]Rule 10b5-1 "defines when a purchase or sale constitutes trading 'on the basis of' material nonpublic information in insider trading cases brought under Section 10(b) of the Act and Rule 10b-5 thereunder." Rule 10b5-1, 17 C.F.R. § 240.10b5-1.

[8]Section 20(a) provides in relevant part that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." Exchange Act § 20(a), 15 U.S.C. § 78t(a).

[9]Specifically, the amended complaint asserts a claim against Tracinda and Kerkorian based on Section 20A(a), which imposes liability on persons who engage in insider trading for damages suffered by individuals who trade contemporaneously with the insider. Exchange Act § 20A(a), 15 U.S.C. § 78t-1(a). The first amended complaint also asserts a claim against Aljian based on Section 20A(c), which imposes joint and several liability on tippers. Exchange Act § 20A(c), 15 U.S.C. § 78t-1(c).

The amended complaint also alleges that, with the benefit of such insider information, Tracinda sold approximately 7.6 million shares of DaimlerChrysler stock between March 19, 1999, and June 11, 1999. Finally, the amended complaint alleges that when DaimlerChrysler announced a decline in cash flows in July 1999, the price of its shares dropped.

The defendants filed a motion to dismiss, arguing that (1) the claims for violation of Sections 10(b) and 20(a) were time-barred; (2) the amended complaint lacked the particularity required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4; (3) the amended complaint failed to establish the elements of insider trading, including scienter, materiality, loss causation, undisclosed "inside" information; and (4) the claim under Section 20A could not survive dismissal of the Section 10(b) claim, which served as the sole predicate violation. The district court granted the motion to dismiss with prejudice the Sections 10(b) and 20(a) claims as barred by the applicable statute of limitations, but denied the motion to dismiss the Section 20A claim. *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1203 (C.D. Cal. 2004).

The district court certified the issue involving the Section 20A claim for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we granted the defendants' petition for permission to appeal.

## II

The defendants argue on appeal that the district court erred by not dismissing the Section 20A claim. The defendants contend that Section 20A requires an *actionable*[10] predicate violation of the Exchange Act. Although the Section 20A claim was timely filed under its own period of limitations, the Sec-

---

[10]By "actionable," we simply mean that the predicate violation must not be time-barred under its own period of limitations.

tion 10(b) claim—the sole predicate violation of the Exchange Act in this case—was not independently actionable because the claim has been dismissed as time-barred under its separate period of limitations. Therefore, the defendants urge, the district court should have also dismissed the Section 20A claim.

A

Our analysis must begin with the statutory language. *United States v. TRW Rifle 7.62X51mm Caliber*, 447 F.3d 686, 689 (9th Cir. 2006). When interpreting Section 20A, we must give words their ordinary or plain meaning. *Id.* "[W]e follow the common practice of consulting dictionary definitions to clarify their ordinary meaning[ ] and look to how the terms were defined at the time [the statute] was adopted." *Id.* (internal quotation marks omitted) (alterations in original). We also recognize the "cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." *Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879). But interpreting a statute "is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). We therefore look not only to the "language itself, [but also to] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

B

**[1]** Section 20A provides a cause of action against "[a]ny person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information." Exchange Act § 20A(a).[11] Section 20A also includes an

---

[11]Because Section 20A(a) and (c) both require a predicate violation of the Exchange Act, or the rules promulgated thereunder, our analysis applies equally to both subsections.

express statute of limitations,[12] which provides that "[n]o action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation." Exchange Act § 20A(b)(4).

The term "violates" in Section 20A is crucial. Claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993). The defendants claim that "the statute is clear: a viable predicate violation is required." But the defendants seek to introduce an additional requirement into the text. Nowhere do we find in the statute such modifying or restricting terms as "viable," "actionable," or "timely."

**[2]** *Webster's Third New International Dictionary*, the edition in print when Congress enacted Section 20A in 1988,

---

[12]"Although the distinction between statutes of limitations and statutes of repose is often blurred, statutes of limitations differ from statutes of repose because the former 'bars plaintiff[s] from bringing an already accrued claim after a specified period of time,' whereas the latter 'terminates a right of action after a specific time, even if the injury has not yet occurred.' " *Fields v. Legacy Health Sys.*, 413 F.3d 943, 952 n.7 (9th Cir. 2005) (citation omitted) (alteration in original). There is some disagreement whether Section 20A's five-year period of limitations is a statute of repose or a statute of limitations. *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391 (7th Cir. 1990) ("Section 20A, by contrast, appears to be an ordinary statute of limitations. The SEC believes that it is a statute of repose as well as a statute of limitations, but it is not so clear to us. The language is in the traditional form of a statute of limitations, and the Solicitor General did not cite any legislative history indicating that it is more potent than the usual variety." (citation omitted)). Because we do not believe our conclusion depends on this distinction and because Section 20A titles the provision "Statute of limitations," we will refer to Section 20A's period of limitations as a "statute of limitations" without deciding the matter.

defines the verb "violates" to mean breaking or disregarding the law. Webster's Third New Int'l Dictionary 2554 (3d ed. 1986); *see also* Black's Law Dictionary 1408 (5th ed. 1979) (defining "violation" to mean "[i]njury; infringement; breach of right, duty, or law"). When, for example, someone asks if a person "violated" the speeding law, she is ordinarily understood as inquiring whether that person disregarded the posted speed limit, not whether a timely action commenced or a successful prosecution resulted. We believe that the term "violates" ordinarily is understood to mean that a person has satisfied the essential elements[13] of the proscribed act regard-

---

[13]The defendants contend that the statute of limitations is an element of Section 10(b), citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 172 (1994), and *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508 U.S. 286, 295 (1993). But in those cases the Court simply refers to the statute of limitations as a general dimension of Section 10(b), not an essential element of the claim. Indeed, the Court recently explained in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), that "[i]n cases involving publicly traded securities and purchases or sales in public securities markets, the action's basic elements include: (1) a material misrepresentation (or omission), (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation,' (5) economic loss, and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Id.* at 341-42 (citations omitted). The defendants' argument that the statute of limitations is an element of Section 10(b) fails.

Nor do we believe that the statute of limitations becomes transformed as an element of such a claim pursuant to the archaic rule " 'that, when the very statute which creates the cause of action also contains a limitation period, the statute of limitations not only bars the remedy but also destroys the liability, and therefore the plaintiff must plead and prove facts showing that he is within the statute.' " *Cook v. Avien, Inc.*, 573 F.2d 685, 695 (1st Cir. 1978) (quoting 3 Louis Loss, Securities Regulation 1742 (2d ed. 1961)). We followed such general rule in *Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985), holding that "the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations" if he is to make out a violation of Section 12 of the Securities Act of 1933. *Id.* at 468.

This rule has incurred forceful, and we think justified, criticism. In *Tregenza v. Great American Communications Co.*, 12 F.3d 717 (7th Cir.

less of whether an action is commenced within the applicable
statute of limitations or whether a traffic citation was issued.
Indeed, we have employed this common understanding of the
term with respect to an action under Section 10(b), the predi-
cate violation in this case. For example, in *Ambassador Hotel
Co., Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017 (9th Cir.
1999), we explained:

> [T]o prove *violation* of either Section 10(b) or Rule
> 10b-5, the private plaintiff must demonstrate that the
> alleged fraud occurred "in connection with the pur-
> chase or sale of a security". Once this foundational
> requirement has been met, the plaintiff must prove
> five elements: 1. misrepresentation (or omission,

---

1993), the Seventh Circuit stated that "[t]o the extent that the rule has per-
sisted, it has done so by blind inertia" and that "[i]t is time that it was dis-
carded." *Id.* at 719. Pursuant to Fed. R. Civ. P. 8(c), the statute of
limitations is an affirmative defense. We recognize, however, that the Pri-
vate Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, may
require a plaintiff to plead certain facts with particularity, which may
establish that the action is time-barred. But the Supreme Court recently
explained in *Jones v. Bock*, 127 S. Ct. 910 (2007), that even though "the
complaint is subject to dismissal for failure to state a claim" because the
"allegations . . . show that relief is barred by the applicable statute of limi-
tations, . . . that does not make the statute of limitations any less an affir-
mative defense." *Id.* at 920.

Notwithstanding that such a disapproved pleading rule may survive in
this circuit with respect to Section 12, we are convinced that it is inappli-
cable to Section 10(b) because, at least in this case, that statute creates no
express period of limitations. *See Lampf, Pleva, Lipkind, Prupis & Peti-
grow v. Gilbertson*, 501 U.S. 350, 364 (1991) (creating a uniform statute
of limitations for an implied cause of action under Section 10(b) because
that statute failed to provide an express period of limitations), *superseded
in part by statute*, 28 U.S.C. § 1658(b); *see also Tregenza*, 12 F.3d at 719
(rejecting the argument that a statutorily mandated statute of limitations
"is an element of the claim itself" because such argument is "a conclusion
rather than an explanation, and an especially dubious one where as in this
case the statute of limitations isn't even found in the statute that creates
the substantive right"). In any event, we remain unpersuaded that the stat-
ute of limitations is an element of Section 10(b).

where there exists some duty to disclose); 2. materiality; 3. scienter (intent to defraud or deceive); 4. reliance; and 5. causation. The plaintiff must prove both actual cause ("transaction causation") and proximate cause ("loss causation").

*Id.* at 1025 (citations omitted) (emphasis added).[14] Accordingly, we are persuaded that the plain meaning of the term "violates" does not require that the predicate claim be filed within its own period of limitations.

**[3]** That the predicate violation need not itself be actionable is further supported by the statutory language of other provisions of the Exchange Act. In particular, the statute of limitations applicable to Section 10(b), the predicate violation in this case, measures the period of limitations in relation to the "violation." A Section 10(b) claim "must be commenced within one year after the discovery of the facts constituting the *violation* and within three years after such *violation*." *Lampf*, 501 U.S. at 364 (emphasis added), *superseded in part by statute*, 28 U.S.C. § 1658(b) ("[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."); *see also* Exchange Act § 9, 15 U.S.C. § 78i(e) ("No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation."). Because the period of limitations is measured from the point of violation, it challenges common sense to conclude that a person only "violates" Section 10(b) if an action is commenced within that period.

---

[14]*See also, e.g.*, *United States v. Smith*, 155 F.3d 1051, 1063 (9th Cir. 1998) ("A *violation* of Rule 10b-5 comprises four elements: a (1) misleading (2) statement or omission (3) of a 'material' fact (4) made with scienter." (emphasis added)).

**[4]** Finally, the defendants' interpretation effectively treats Section 20A's own five-year statute of limitations under the present statutory scheme "as surplusage—as words of no consequence." *Ratzlaf v. United States*, 510 U.S. 135, 140 (1994). We know of no possible predicate violation, and the defendants cite none, with a limitations period that is longer than Section 20A's five-year period. Thus, accepting the defendants' interpretation would effectively render Section 20A's express statute of limitations meaningless because the underlying predicate violation's statute of limitations would always dictate the period of limitations for a Section 20A action under the present statutory scheme.[15] Only if Section 20A is independently governed by its own statute of limitations will that provision retain meaning.

## C

The defendants raise two additional arguments that require our attention.

## 1

**[5]** Relying on *Jackson National Life Insurance Co. v. Merrill Lynch & Co.*, 32 F.3d 697, the defendants contend that the Second Circuit interpreted Section 20A contrary to our analysis in this case. The defendants read too much into *Jackson*

---

[15]At the time Congress enacted Section 20A in 1988, Section 10(b) contained no uniform period of limitations. Courts borrowed the period of limitations for Section 10(b) from the most analogous state cause of action before the Supreme Court adopted a uniform period of limitations in 1991. *Lampf*, 501 U.S. at 355, 364. Under the previous borrowing scheme, the defendants' interpretation of Section 20A would not render the express statute of limitations meaningless because a Section 20A claim could be time-barred under its own five-year statute of limitations, but the underlying Section 10(b) claim could be actionable under the applicable state statute of limitations. Nevertheless, as discussed above, nothing in the statutory language evidences Congress's intent that Section 20A claims be time-barred whenever the predicate violation is time-barred.

*National*. There, the court held that Section 20A of the Exchange Act entails a predicate violation of the Exchange Act in the context of rejecting an attempt to base a Section 20A claim on violations of Sections 11 and 12(2) of the Securities Act of 1933. *Id.* at 704. But this conclusion necessarily followed from Section 20A's express requirement of a violation "of *this chapter* or the rules or regulations thereunder." Exchange Act § 20A(a) (emphasis added). The reference to "this chapter" is to the Exchange Act, not the Securities Act of 1933. *Jackson Nat'l*, 32 F.3d at 703.

The Second Circuit also explained that the statute of limitations applicable to Sections 11 and 12(2), "after setting out the one-year 'inquiry notice' period," imposes a three-year absolute period of limitations on claims premised under those sections. *Id.* at 704 (citing 15 U.S.C. § 77m). The court explained that "Congress added § 20A . . . to remedy the very specific problems inherent in prosecuting insider trading cases" and "the five-year limitations period recognizes the difficulties of ferreting out evidence sufficient to prosecute insider trading cases." *Id.* at 703 (internal quotation marks omitted). The court reasoned that "[b]ecause the difficulties of pleading and proving scienter and the other elements of a Rule 10b-5 action do not similarly impede claims under §§ 11 and 12(2) of the '33 Act, it would skew the legislative balance of interests to apply § 20A's five year limitations period to the lower threshold of liability applicable to the initial distribution of securities under the '33 Act." *Id.* at 704. Accordingly, the court concluded that allowing a Section 20A claim based on a violation of Sections 11 or 12(2) of the Securities Act of 1933 "would put us in conflict with Congress's evident intent not to permit underwriter and issuer liability to extend beyond the three-year horizon." *Id.* The defendants claim that this is significant because Section 10(b), the predicate violation in this case, contains a similar three-year period of limitations. We are unpersuaded. First, as the district court recognized, "[u]nlike the claims presented in *Jackson*, the claims asserted in this action implicate the problems inherent in advancing

insider trading claims." *Johnson*, 394 F. Supp. 2d at 1195. Moreover, our interpretation presents no threat to Congress's evident intent or the legislative balance of interests because Section 10(b) is a cause of action created by the courts and, at least in this case, operates under a court-imposed period of limitations.

**[6]** Accordingly, our interpretation of Section 20A is not contrary to the Second Circuit's well-reasoned decision in *Jackson National*.

2

The defendants' reliance on *In re VeriFone Securities Litigation*, 11 F.3d 865, is also misplaced. The defendants argue that in *VeriFone* we "acknowledged that if plaintiffs 'have failed to allege an actionable independent underlying violation of the [Exchange Act], they similarly cannot maintain a claim under § 20A.' " But we only acknowledged that the plaintiffs in that case conceded this point. *Id.* at 872 ("Shareholders *concede* that if they have failed to allege an actionable independent underlying violation of the [Exchange Act], they similarly cannot maintain a claim under § 20A. Accordingly, in light of our conclusion that no violation of the [Exchange Act] has been stated, the § 20A claim was properly dismissed." (emphasis added)). Moreover, in *VeriFone* the predicate violation collapsed because the plaintiffs failed to establish a material omission, an essential element of a Section 10(b) violation. *Id.* at 871. Our interpretation does not disturb the established requirement that the plaintiff plead and prove the essential elements of the predicate violation to maintain an action under Section 20A.

III

**[7]** In sum, we conclude that to maintain a claim under Section 20A, a plaintiff need not plead an actionable predicate

violation. Accordingly, the district court did not err in deny-
ing the defendants' motion to dismiss the Section 20A claim.

AFFIRMED.