Opinion by Judge THOMPSON; Dissent by Judge BERZON.
*1105 OPINION
THOMPSON, Senior Circuit Judge:
Jason Lee Albritton pleaded guilty to Credit Union (Bank) Robbery, in violation of 18 U.S.C. § 2113(a). Albritton was sentenced to 105 months of incarceration to run consecutive with any other undischarged term of imprisonment, followed by three years of supervised release.
On appeal, Albritton challenges three aspects of his sentence. First, he argues the court improperly determined that he “otherwise used” a dangerous weapon, rather than merely “brandished or possessed” the weapon, and, thus, his offense level was improperly increased by four (4). See U.S. Sentencing Guidelines Manual (hereinafter “U.S.S.G.”) § 2B3.1(b)(2)(D) (addressing an “otherwise used” dangerous weapon); § 2B3.1(b)(2)(E) (imposing an increase of three (3) offense levels for a “brandished or possessed” dangerous weapon). Second, he argues that, because there was no “sustained focus” on a victim, the court improperly increased his offense level by two (2) for “physically restrain[ing]” a victim. See U.S.S.G. § 2B3.1(b)(4)(B). Third, Albritton challenges the consecutive nature of his sentence, arguing that it should be concurrent, or at least partially concurrent, to another term he is serving.
We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
BACKGROUND
In his briefing to this court, Albritton admits that in committing the credit union robbery he held a BB pistol while advancing toward a teller who was on the phone. He had a black bag he placed on the counter. The teller stepped back and whispered into the phone, “We’re being robbed.” Albritton ordered the teller to put down the phone and shouted, “Down, Down!” Albritton then turned toward the front door and entered the office of Debi Zeiss, a loan officer. Upon his knocking, she turned around to see a gun pointed at her.[1] Albritton said, “Money, hurry.” He followed Zeiss out of her office, holding the BB pistol.
Upon Albritton’s request, we watched a surveillance video of the robbery. The key image of the silent video shows the scene from over and behind the left back corner of the teller’s area, the lobby, the front door, and Zeiss’ office. A ski-masked man with a black bag enters and advances immediately to the teller and toward the camera, holding a gun at eye level pointed at the teller. He sets his bag on her counter, appears to gesture across the room, and then points the gun again at the teller, holding the gun above eye level extended out over the counter. He then lowers the gun, but still points it at the teller until she moves toward and under the camera, disappearing from view.
The man then turns around and moves away from the camera and toward Zeiss’ office. He walks about 10 to 20 feet across the lobby, and points the gun at Zeiss. She does not appear to notice the man until he gets within a few feet of her door, when she looks up. She gets up as he steps into her office, and he motions across the room with the gun. Zeiss leaves the office before him and, with him following closely behind her, she walks back across the lobby in the indicated direction, disappearing off the right side of the image. During this walk, the man does not appear to directly point the gun at Zeiss until about half-way across the scene.
*1106 A few seconds later, in the foreground of the video behind the teller’s desk, the back of the teller’s raised hand briefly appears, and then Zeiss briefly reappears walking toward and under the camera, apparently joining the teller’s position. The man also reappears in the foreground of the video, but he does not again point the gun toward the women — he pulls money from two drawers, collects the cash in his black bag, and leaves the credit union.
The district court watched the surveillance video at Albritton’s sentencing hearing and imposed a within-guidelines sentence. Consistent with the presentence report’s recommendation, the district court sentenced Albritton to 105 months of incarceration to run consecutive with any other undischarged term of imprisonment, followed by three years of supervised release. At the time of sentencing, Albritton was already serving a 51-month term for an armed bank robbery conviction in another state. Albritton appeals his sentence.
DISCUSSION
1. “Otherwise Used” a Dangerous Weapon
We review de novo the district court’s interpretation of the Guidelines, and review for clear error the court’s factual findings. United States v. Alderman, 601 F.3d 949, 951(9th Cir.2010). We have not decided whether the application of the Sentencing Guidelines to the facts is reviewed de novo or for abuse of discretion. United States v. Laurienti, 611 F.3d 530, 552 (9th Cir.2010).
With regard to dangerous weapons, the Sentencing Guidelines’ Application Notes define “brandished” and “otherwise used” as follows:
• Brandished: “[A]ll or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.”[2]
• Otherwise Used: “[T]he conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.”
U.S.S.G. § 1B1.1 cmt. n.1(C) (defining “brandished”); id. § 1B1.1 cmt. n.1(I) (defining “otherwise used”).
In support of the contention that Albritton merely “brandished” the pistol, his attorney argues that the “entire robbery” lasted less than three minutes, the BB pistol was displayed for “no more than a minute-and-a-half,” and the pistol was brandished for “probably less than 10 or 15 seconds.” In addition, during his change of plea hearing in the district court, when asked if he pointed the BB pistol at anyone, Albritton stated: “I can’t recall actually pointing it. I didn’t — it wasn’t a real gun; so I didn’t want them to even look at it. I just ran in and yelled. And I think confusion just set in then.” This statement, however, is refuted by the surveillance video, which shows Albritton pointing the gun directly at each of the two credit union employees.
Albritton erroneously relies on United States v. Moerman for the proposition that a defendant “otherwise used” a weapon only when his or her “actions and/or statements directly threatened an individual with the use of the firearm if the person *1107 being threatened did not comply with the defendant’s demands.” 233 F.3d 379, 381 (6th Cir.2000). Moerman was decided under a prior version of the Guidelines, which expansively defined “brandished” as meaning “that the weapon was pointed or waved about, or displayed in a threatening manner.” Id. at 380. After revision of the Guidelines’ definition of “brandished,” the Sixth Circuit recognized that Moerman’s “distinction [between explicit and implicit threats] is no longer supported.” United States v. Bolden, 479 F.3d 455, 462 (6th Cir.2007).
In United States v. Villar, the First Circuit distinguished between the current Guidelines’ definitions of “brandished” and “otherwise used.” 586 F.3d 76, 90 (1st Cir.2009). According to Villar, a weapon is “otherwise used” once there is “specific leveling” of the weapon at another person. Id. “Brandishing” is a “general display of weaponry.” Id. (explaining this distinction, drawn in United States v. LaFortune, 192 F.3d 157, 161 (1st Cir.1999), survives the Guidelines’ revision, as it is “fully consistent with the amended definition of ‘brandished’ ”).
Villar's demarcation between “brandished” and “otherwise used” is consistent with dictionaries, which define the verb “brandish” as: “1. To wave or flourish (a weapon, for example) menacingly. 2. To display ostentatiously.” The American Heritage Dictionary of the English Language 224 (4th ed.2000). See also The Random House Dictionary of the English Language 254 (2d ed.1987) (defining the verb “brandish” as “to shake or wave, as a weapon; flourish”). We agree with the First Circuit’s distinction and adopt it.
Applying that distinction to this case, it is clear that Albritton “otherwise used” the BB pistol. Albritton pointed the pistol directly at the teller and ordered her “Down, Down!” In addition, Albritton specifically leveled the weapon at loan officer Zeiss in directing her across the room. Thus, we affirm the district court’s offense level increase on this ground.
II. “Physically Restrained” a Victim
The Guidelines provide that, “if any person was physically restrained to facilitate commission of the offense or to facilitate escape,” the offense level shall be increased by two. U.S.S.G. § 2B3.1(b)(4)(B). The Guidelines define “physically restrained”:
Physically restrained: “[T]he forcible restraint of the victim such as by being tied, bound, or locked up.”
U.S.S.G. § 1B1.1 cmt. n.1(K). See United States v. Parker, 241 F.3d 1114, 1118 (9th Cir.2001) (“These examples are illustrative and not exclusive.”).[3]
The Ninth Circuit has observed, “cases holding that a defendant physically restrained his victims usually involve a sustained focus on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere.” See id. A “sustained focus” on a victim exists when, at gunpoint, the victim is ordered into a *1108 back room, United States v. Nelson, 137 F.3d 1094, 1112 (9th Cir.1998), repeatedly forced to get down and get up, United States v. Thompson, 109 F.3d 639, 641 (9th Cir.1997), or forced to walk some distance (i.e., from the teller area to the vault area), id. (alternative holding). It is not enough if the defendant briefly points a gun at a victim and orders her once to get down. Parker, 241 F.3d at 1118-19 (explaining that Congress must have meant something more, because “nearly all armed bank robberies will presumably involve such acts”).
Albritton argues that, because there was no “sustained focus” on Zeiss, she was not “physically restrained.” However, the video clearly shows a sustained focus on Zeiss. Albritton directed Zeiss across and around the office. He followed right behind her, gun in hand. Thus, we affirm the district court’s offense level increase on this ground.[4]
III. Consecutive Nature of Albritton’s Sentences
Albritton argues the district court erred in requiring that his sentence run consecutive to any other undischarged term of imprisonment. In particular, Albritton argues that two of his convictions— the Montana crime at issue here and an armed bank robbery in Florida, for which he was serving 51 months at the time of sentencing in this case — were essentially one course of conduct, because they involved “very similar” modi operandi and occurred close in time (less than 6 months apart).
Albritton does not show the district court clearly erred in rejecting his “one course of conduct” argument. The crimes involved different victims, are clearly distinct in time and place, and were not shown to have occurred with regularity. See United States v. Hahn, 960 F.2d 903, 907, 910 (9th Cir.1992) (reviewing for clear error and stating, “the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity”).[5]
AFFIRMED.

. Despite this admission in Albritton's appellate briefing, at oral argument Albritton's attorney contended that Albritton pointed his finger, not the gun, at Zeiss. The surveillance video, however, shows Albritton pointing the gun at Zeiss, at least for a portion of their interaction.

. This definition of "brandished” became effective on November 1, 2000. See U.S.S.G. app. C vol. 2 amend. 601 p. 73 (Nov. 1, 2003).

. Commentary to the robbery Guideline explains that it "provides an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up.” U.S.S.G. § 2B3.1 cmt. background. At oral argument, Albritton’s attorney noted that the "physically restrained” definition includes restraints "such as by being tied, bound, or locked up” (emphasis added), while the robbery commentary excludes the "such as” language.
Albritton’s attorney argues the omission of the "such as” language indicates that the robbery Guideline’s list of physical restraints excludes all non-listed restraints. We disagree. The Application Notes for the robbery Guideline specifically state that "physically restrained” is defined in the commentary to U.S.S.G. § 1B1.1. U.S.S.G. § 2B3.1 cmt. n.1.

. Albritton argues the physical restraint enhancement constituted impermissible double-counting with the enhancement for him having "otherwise used” the BB pistol. This argument is frivolous.
The enhancements address different harms, and the conduct addressed by each enhancement is distinct. See Parker, 136 F.3d at 654 ("Double counting is permissible if it accounts for more than one type of harm caused by the defendant's conduct, or where each enhancement of the defendant’s sentence serves a unique purpose under the guidelines.”); United States v. Rucker, 178 F.3d 1369, 1373 (10th Cir.1999) (citing Parker and addressing the same enhancements at issue in this case; explaining that, because pointing a gun at a victim does not necessarily physically restrain him, and because a victim can be physically restrained without a weapon, the addressed conduct causes different harms and the enhancements do not overlap).

. Albritton contends the imposition of consecutive sentences is inconsistent with the Sentencing Guidelines’ goal of diminishing sentencing disparity. Because Albritton makes no showing of how his sentence is unfair, we reject this contention.