**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JEREMIAH LETTIERE,
            *Defendant-Appellant.*

No. 10-30101

DC No.
9:09 cr 0049 DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Submitted April 14, 2011*
Seattle, Washington

Filed May 23, 2011

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge Tashima

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

6773

## COUNSEL

Andrew J. Nelson, Assistant Federal Defender, Missoula, Montana, for the defendant-appellant.

Tara J. Elliott, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

## OPINION

TASHIMA, Circuit Judge:

Appellant Jeremiah Lettiere was convicted of robbery affecting commerce and use of a firearm during a crime of violence. Lettiere's sole contention on appeal is that the district court erred in instructing the jury on the definition of "brandish." We have jurisdiction under 28 U.S.C. § 1291, and we affirm the conviction.

## I.   BACKGROUND

Lettiere was charged, together with co-defendants Michael File and Skye Bruns, with one count of robbery affecting commerce, in violation of 18 U.S.C. § 1951(a), and one count of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

On September 3, 2009, a deputy sheriff, in Missoula, Montana, saw a white pickup truck sideswipe a blue pickup truck. The deputy pursued the vehicles. The chase came to an end when the white truck, which was driven by one Patrick Collins, rolled over and the blue truck, which held Lettiere and his co-defendants, crashed through a fence. An altercation between Collins and Lettiere was ongoing when the deputy arrived at the scene. Collins told the deputy that he had been chasing Lettiere, File, and Bruns because they had just robbed him of five pounds of marijuana and $12,000.

Collins testified at trial that he and another individual had met Lettiere and Bruns in a motel room (File joined them later), intending to sell them ten pounds of marijuana for $30,000. Collins had brought five pounds of marijuana and over $12,000 in cash, in a backpack, with him to the meeting. During the meeting, according to Collins, Lettiere got up and pulled a gun out from under the mattress of one of the beds, then sat down again and placed it in his lap.

File testified that he wasn't sure if Collins was looking at Lettiere when he retrieved the gun and that at that point Lettiere "wasn't pointing it at anybody," but was "just kind of moving it around in his hand." Lettiere then told Collins to give his backpack to Bruns. Collins refused. Regarding what happened next, Collins' testimony differs from File's. Collins testified that he stood up in an attempt to leave and that Lettiere then "pointed the gun towards" him and told him to sit back down and give the backpack to Bruns or else File would "knock [him] out." File testified that Collins actually had attempted to take the $12,000 out of his backpack when he realized Bruns was going to take the backpack from him, at which point Lettiere "waved the gun [but] never pointed it at him" and said "[i]f you don't stop right now, I'm going to get vicious." In any event, Lettiere, Bruns, and File then left the room with Collins' backpack, which still contained the cash and marijuana, and got into the blue pickup. Collins got into his own pickup and chased them, resulting in the crash and altercation witnessed by the deputy.

Lettiere was charged with, inter alia, use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1)(A) is a penalty provision that sets out mandatory minimum sentences for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Persons who merely use, carry, or possess a firearm in relation to or furtherance of the crime are subject

to a mandatory minimum term of imprisonment of five years. 18 U.S.C. § 924(c)(1)(A)(i). The mandatory minimum increases to *seven* years, however, if the firearm is "brandished." 18 U.S.C. § 924(c)(1)(A)(ii).[1] The baseline issue of whether the firearm was carried, used, or possessed is an element of the offense and must be found by a jury. The Supreme Court has held, however, that whether a firearm was brandished is a "sentencing factor . . . to be found by the judge, not [an] offense element . . . to be found by the jury." *Harris v. United States*, 536 U.S. 545, 556 (2002).

The indictment alleged that Lettiere had "used and brandished" a firearm in violation of § 924(c)(1)(A)(ii), in spite of the fact that a finding of brandishment is not required for conviction under § 924(c)(1)(A), and a finding of brandishment for purposes of determining the mandatory minimum sentence does not need to be made by the jury. Therefore, at the charge conference, there was some dispute as to how to instruct the jury on brandishment. Lettiere's counsel admitted that brandishment is not an element of the offense, but still sought a jury instruction that required the jury to find that Lettiere had used *and* brandished, rather than used *or* brandished, the firearm. Counsel for the government eventually agreed to this, stating that she believed "we [have] proved [both] *used* and *brandished*." The district judge stated that he believed a jury instruction on brandishment was not required, but that he would include it anyway, because counsel for Lettiere and counsel for the government "both want[ed] it."

With that issue decided, counsel for both parties agreed that a definition of "brandish" should be included in the instructions. Lettiere had requested that the jury be given the definition of "brandish" from the American Heritage Dictionary, which is "1. To wave or flourish menacingly; 2. To display ostentatiously." The court, however, decided to give the statu-

---

[1] If the firearm is discharged, the mandatory minimum is ten years. 18 U.S.C. § 924(c)(1)(A)(iii).

tory definition, as set forth in § 924(c)(4), which is "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person."

The jury found Lettiere guilty of both counts and Lettiere appeals.

## II.   DEFINITION OF "BRANDISH"

**[1]** Lettiere argues that the challenged instruction incorrectly defined "brandish"; it did not. We express no opinion on whether the inclusion of "brandished" in the indictment was harmless surplusage, or on whether "brandished" became a de facto element that the government improvidently obligated itself to prove. Specifically, Lettiere contends that the district court erred by not providing the dictionary definition of "brandish" in lieu of or in addition to the statutory definition.[2] That contention, however, is contrary to the well-settled principle that, for purposes of statutory interpretation, the language of the statute is the first and, if the language is clear, the only relevant inquiry. *See Schwab v. Reilly*, 130 S.Ct. 2652, 2662 (2010) ("Although we may look to dictionaries . . . to determine the meaning of words the [Bankruptcy] Code does not define . . . , the Code's definition of [the term at issue] in this case is clear" and is therefore controlling.); *Burgess v. United States*, 553 U.S. 124, 129 (2008) (statutes control the meaning of the words used in them in the ordinary case); *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, *even if it varies from that term's ordinary meaning*.") (emphasis added); *United States v. Carter*, 421 F.3d

---

[2]The parties dispute the standard of review on this issue, with Lettiere arguing for *de novo* review, while the government argues that the proper standard is abuse of discretion. Because we would find no error under either standard, we need not decide which standard applies.

909, 911 (9th Cir. 2005) ("It is well settled that, in a statutory construction case, analysis must begin with the language of the statute itself; when the statute is clear, judicial inquiry into [its] meaning, in all but the most extraordinary circumstance, is finished.") (internal quotation marks omitted). Only in the absence of a statutory definition does this court normally look to the ordinary meaning or dictionary definitions of a term. *United States v. Banks*, 556 F.3d 967, 978 (9th Cir. 2009) We perceive no reason why, in the circumstances of this case, this principle should not extend to the definition of terms given in jury instructions.

Lettiere cites only one case to counter the weight of this authority, and that case does not support his assertion that a dictionary definition must, or even may, supplant a statutory one. *Johnson v. Aljian*, 490 F.3d 778 (9th Cir. 2007), notes that a court's analysis "must begin with the statutory language" but that courts may "follow the common practice of consulting dictionary definitions to *clarify* [the] ordinary meaning" of terms used in a statute. *Id.* at 780 (emphasis added). But clarification is not necessary when a statute defines its own terms. Moreover, the court in *Johnson* cited for this principle the case of *United States v. TRW Rifle 7.62X51mm Caliber*, 447 F.3d 686 (9th Cir. 2006), in which the court "follow[ed] the common practice of consulting dictionary definitions" only because "Congress did not define what it meant by" the statutory term at issue. *Id.* at 689.

**[2]** Better support for Lettiere's argument comes from *United States v. Albritton*, 622 F.3d 1104 (9th Cir. 2010), in which this court considered the meaning of the term "brandish" as it is used in the United States Sentencing Guidelines (the "Guidelines"). In contrast to § 924(c), which imposes a higher minimum sentence when a firearm is brandished (seven years) than when it is "used" (five years), the Guidelines impose a greater offense-level for "otherwise us[ing]" a dangerous weapon, than for "brandish[ing]" a dangerous weapon. *See* U.S.S.G. §§ 2B3.1(b)(2)(D), 2B3.1(b)(2)(E).

The Guidelines define "otherwise used" as conduct that "[does] not amount to the discharge of a firearm but [is] more than brandishing . . . ." U.S.S.G. § 1B1.1 cmt.n.1(I). The Guidelines definition of "brandish" is effectively identical to that in § 924(c)(4). U.S.S.G. § 1B1.1 cmt.n.1(C). The defendant in *Albritton* argued that the district court had improperly determined that he had "otherwise used" a weapon and that in fact he had only "brandished" it. 622 F.3d at 1105. The court looked to dictionary definitions, as well as the definition in the Guidelines and interpretations in existing caselaw, to determine the nature of the distinction between "brandishing" and "otherwise using." *Id.* at 1106-07.

**[3]** *Albritton* does not indicate, however, that we should disregard the general principle that a clear statutory definition is controlling. While we did use dictionary definitions for clarity in that case, our analysis began with the definition in the Guidelines. *Id.* at 1106. We then turned to caselaw from other circuits for perspective on the term and, finally, cited to dictionary definitions merely to provide further support for the conclusions already reached about the correct definition of the term. *Id.* at 1107.

**[4]** Lettiere also argues that the statutory definition is deficient because it inverts the quantum of proof necessary to find brandishment relative to the quantum of proof necessary to find that the defendant only used the firearm — in other words, that the statutory definition of brandished requires a lesser finding than used, despite the fact that the mandatory minimum sentence is greater for the former than the latter. There is no statutory definition of "use" in § 924(c), but courts have interpreted it as requiring merely some form of "active employment" of the weapon. *United States v. Beaudion*, 416 F.3d 965, 968 (9th Cir. 2005) (citing *Bailey v. United States*, 516 U.S. 137, 149-51 (1995)).[3] Lettiere's argu-

---

[3]The Supreme Court in *Bailey* was interpreting an earlier version of the statute; after that decision was issued, Congress amended the statute to

ment is that, given this definition of "use," the statutory definition of "brandish" permits one to "brandish" a weapon without "using" it — that is, without actively employing it in connection with a crime.

**[5]** This argument is unavailing in light of both the plain language of the statute and this court's past interpretations of the term "use" in § 924(c). For starters, § 924(c)(1)(A) clearly requires that any use, brandishment, or discharge of the weapon occur "during and in relation to" the relevant crime. The statutory definition of brandish requires a defendant to display or make reference to a weapon in order to intimidate another person. There is simply no logical basis for Lettiere's assertion that a defendant could in any conceivable circumstances engage in such behavior "during and in relation to" a crime without being deemed to have "actively employed" the weapon in relation to the crime.

**[6]** This court's past holdings support that interpretation. In *Beaudion*, we rejected the defendant's argument that there was no distinction between use and brandishment because one could not use a firearm without brandishing it. In fact, we held that use of a firearm can encompass activities that do not require the defendant to brandish it — for example, bartering it in a criminal context, using the butt of a rifle to break a padlock, or sneaking up on a security guard and using a firearm to strike him unconscious. 416 F.3d at 968-69; *see also United States v. Bowen*, 527 F.3d 1065, 1073-74 (10th Cir.

---

provide that the mandatory minimum would also apply to possession of a weapon (not just its use) in furtherance of the crime. *See Beaudion*, 416 F.3d at 969 n.4. The Court's reasoning in *Bailey* was based in part on the fact that Congress had *not* elected to include possession in the earlier version of the statute and thus that Congress must have intended "use" to mean something more active than the mere carrying or possession of a weapon. *Bailey*, 516 U.S. at 148-51. Nonetheless, the gloss that the *Bailey* court put on the term "use" is still valid and has been treated as such by this court, even though the case no longer provides an accurate description of the range of behavior covered by § 924(c)(1)(A).

2008) (brandish as defined in § 924(c) is a subset of use). Moreover, the statutory definition of brandishment adds a key element that distinguishes it from use: the firearm must be used *to intimidate* another person. *United States v. Carter*, 560 F.3d 1107, 1114 (9th Cir. 2009); *Beaudion*, 416 F.3d at 968. The intimidation requirement not only makes brandishment a narrower category of activity than use, but it also makes the statutory definition narrower than the dictionary definition offered by Lettiere, which would permit a finding of brandishment if a criminal carried an expensive antique gun in a holster or pocket during the commission of a crime and then waved it about in glee, thereby "display[ing] it ostentatiously," to celebrate the successful completion of the crime.

## III.   CONCLUSION

**[7]**  We hold that the district court neither erred nor abused its discretion in instructing the jury with the statutory definition of "brandish" and declining Lettiere's proffer of a dictionary definition.[4]

**AFFIRMED.**

---

TASHIMA, Circuit Judge, concurring:

I write separately to explain why it is necessary for us fully to review Lettiere's challenge to the jury instruction defining "brandish."

At first glance, the knowledgeable reader of this opinion will ask herself or himself why did the Ninth Circuit conclude it was necessary to define "brandish" for jury instruction pur-

---

[4]Because we conclude that the district curt did not err in its jury instructions, we need not decide whether any error was harmless.

poses when brandishing is not an element of the offense defined in 18 U.S.C. § 924(c)(1), which must be found by a jury, but is a "sentencing factor . . . to be found by the judge"? *Harris v. United States*, 536 U.S. 545, 556 (2002). The answer to that question, which the majority opinion declines to address, *see* Maj. Op. at 6779, is wrapped up in the unusual nature of the proceedings at the charge conference in district court.

As explained by the majority, the indictment charged that Lettiere had both "used and brandished" a firearm in violation of § 924(c)(1)(A)(ii). Further, at the charge conference, both the defendant and the government agreed that the jury instructions should include a definition of "brandish." *See* Maj. Op. at 6778. Thus, we are confronted with a threshold issue of first impression in this circuit: given that the jury was not required to find that Lettiere had brandished a firearm in order for him to be convicted under § 924(c)(1)(A), or for Lettiere to be subject to the mandatory minimum sentence for brandishing,[1] should we decline to hear Lettiere's challenge to the jury instruction on brandishing because it is a moot point? Stated differently, when a judge instructs a jury on an issue that is not an element of the offense, is the instruction surplusage and, thus, any error in the formulation of that instruction *per se* harmless error?[2]

Because there is no Ninth Circuit or Supreme Court case law on this subject, I would look to the law of the other circuits for guidance. Doing so, I would answer these questions in the negative. Several circuits have held that, when a trial judge instructs the jury, without objection from the govern-

---

[1]For sentencing purposes, as noted above, whether a firearm is brandished is to be found by the court.

[2]The government has not made this argument, but we may affirm on any ground supported by the record, *see Sec. Life Ins. Co of Am. v. Meyling*, 146 F.3d 1184, 1190 (9th Cir. 1998), and this argument, if sustained, would be an easy ground on which to affirm the conviction.

ment, that a specific element must be found for a criminal conviction, that element becomes a necessary element of that particular conviction under the "law of the case" doctrine, even if the element would not otherwise have been necessary under controlling case law or statute.[3] *See United States v. Williams*, 376 F.3d 1048, 1051 (10th Cir. 2004); *United States v. Taylor*, 933 F.2d 307, 310 (5th Cir. 1991); *United States v. Tapio*, 634 F.2d 1092, 1094 (8th Cir. 1980); *see also United States v. Zanghi*, 189 F.3d 71, 79 (1st Cir. 1999) (clarifying that this rule applies in criminal cases only when the extraneous element is charged in the indictment and the jury instruction is not "patently incorrect"). This rule is based on the principle that "the Government chooses its charge and once it announces to the jury what it will have to prove," it should be held to its charge, "even though it undertook to prove an element not required by the law." *United States v. Romero*, 136 F.3d 1268, 1273 (10th Cir. 1998).

In this case, the government undertook to prove that Lettiere had brandished a firearm at two junctures: first, when it charged brandishment in the indictment, and, second, when it agreed to an instruction on brandishment.[4] It is because of

---

[3]A leading treatise, while noting the existence of this rule, observes that it is not really a proper application of the "law of the case" doctrine but instead is more likely a manifestation of principles "of proper trial-court procedure and the proper relationships between appellate courts and trial courts." 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.6 (2d ed. 2010).

[4]It is true that the government initially proposed instructions that required the jury to find only that Lettiere had used *or* brandished the gun and argued to the district judge that the jury would not need to find brandishment to convict or to permit the judge to apply the minimum sentence for brandishment. But government counsel eventually capitulated to Lettiere's argument that the instructions should require a finding that he both used *and* brandished the gun, stating that the government "would shoulder the burden of [both] used and brandished" because she, government counsel, believed the government had proven both and that she "[didn't] mind" the instruction requiring the jury to find both. Therefore, it is clear that the government did not object to the instruction on brandishment.

these circumstances that I agree with the majority, which implicitly, but necessarily, holds that the jury instruction requiring a finding of brandishment has, in the circumstances of this case, become a necessary element of Lettiere's conviction under § 924(c)(1).

Once the district court undertook to instruct the jury on "brandish," even though it was not required to do so as an element of the offense, under the law of the case doctrine, I would expressly hold that the district court was bound correctly to instruct the jury. With these additional comments, I fully join in the majority opinion.